**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**September 25, 2014**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

RICHARD ANTHONY TRENT,

     Defendant - Appellant.

No. 12-6283

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:12-CR-00053-HE-1)**

Julia C. Summers, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant – Appellant.

Mark R. Stoneman, Special Assistant United States Attorney, (Sanford C. Coats, United States Attorney, and Robert D. Gifford, II, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff – Appellee.

Before **HARTZ**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

**HARTZ,** Circuit Judge.

Defendant Richard Trent appeals his conviction and sentence for being a felon in possession of a firearm. He raises five issues that can be disposed of briefly and a

challenging issue about whether we can apply what is called the "modified categorical approach" to determine whether his prior felony is a "serious drug offense" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). On the ACCA issue we hold that the general Oklahoma conspiracy statute is divisible and therefore subject to the modified categorical approach, and that Defendant's prior violation of that statute was a serious drug offense because the object of the conspiracy was manufacturing methamphetamine. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

On August 13, 2012, Defendant visited the home of Michael Kimberly in Geronimo, Oklahoma, with Lloyd Robinson and Angela Keller. While the three were there, a neighbor called 911 to report someone standing outside the home with a gun. The neighbor described the person as a white man with tattoos on his arms who was wearing blue jeans and no shirt. In a later 911 call, the neighbor said that the man had left the house in a green Volvo. A police officer responding to the call pulled over a green Volvo a few minutes later and found Robinson (a black man) behind the wheel, Keller in the front passenger seat, and Defendant in the back seat. The officer removed them from the car and searched it, finding a handgun in the back seat. It was not in plain view but wedged behind the arm rest, which was pushed out about halfway. When the officer ran the criminal histories of the three, the dispatcher told the officer that Keller and Defendant had prior felony convictions, and they were arrested. Robinson was allowed to leave in the Volvo, which belonged to his mother. Defendant was indicted on

2

one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

The principal issue at trial was whether the gun in the car was Defendant's. The government put on considerable evidence to support the charge. Aaron Bruno, the owner of the gun, testified that he had left it temporarily with Heather Widner. She testified that Defendant had sent her a text message to say that he "needed a burner" and that she had given him Bruno's pistol. R., Vol. 3 at 36. She admitted that her testimony differed from her statement to investigators a week earlier, when she had said that Defendant had come over to smoke marijuana with her the night before the incident and that she had not given him the gun. Robinson testified that at Keller's request he picked up Keller and Defendant and drove them to a house in Geronimo. He had never before met Defendant or been to the house. He said that he saw Defendant with a gun while at the house. The neighbor also identified Defendant as the man he had seen holding a gun.

Defendant called several witnesses to try to show that the gun was Robinson's. Keller testified that the day before the incident, she had gone with Robinson to the house in Geronimo, where he gave methamphetamine to a young woman who refused to pay for it and ran into the house, leaving a pit bull outside so that Robinson and Keller could not retrieve the money he was owed. Keller also said that she saw a gun in Robinson's purse the next day, that it was his idea to go back to the house in Geronimo, and that Defendant just went along for the ride and did not have a gun. The defense presented two other

3

witnesses whose testimony corroborated parts of Keller's account of her activities with Robinson.

The jury convicted Defendant. At sentencing he argued that he was not subject to a mandatory minimum sentence under the ACCA. He conceded that he had convictions for two serious drug offenses but contended that his conviction under Oklahoma's general conspiracy statute did not qualify as the third conviction necessary for the ACCA enhancement. The district court disagreed and sentenced him to 196 months in prison plus five years of supervised release.

## II.    DISCUSSION

We can easily reject five of Defendant's challenges to his conviction and sentence: (1) that the evidence was insufficient to support the verdict; (2) that the district court improperly admitted into evidence his 2007 conviction as a felon in possession of a firearm to show knowledge in the 2012 case; (3) that a jury instruction improperly cited to the sentencing provision of the statute, although it did not state the provision's contents; (4) that the court improperly gave an investigative-techniques jury instruction; and (5) that his sentence was substantively unreasonable. We then turn to the subtle question he raises under the ACCA.

### A.    Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support the jury's verdict. "We review sufficiency of the evidence claims de novo, but examine the evidence in the light most favorable to the government and ask only whether any rational juror could

have found [the defendant] guilty beyond a reasonable doubt." *United States v. Oldbear*, 568 F.3d 814, 822–23 (10th Cir. 2009).

Defendant's insufficiency argument is essentially that some of the prosecution witnesses were not credible. Such argument is doomed to failure. In assessing the sufficiency of the evidence, we will ordinarily not "consider witness credibility." *Id.* at 823. "We will only disregard testimony as incredible if it gives facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001) (brackets and internal quotation marks omitted). Defendant does not suggest that the problems with witness testimony at his trial satisfied either ground in *Oliver* for disregarding testimony.

## B.    Admission of Previous Conviction

Defendant argues that it was error under Fed. R. Evid. 404(b) to admit into evidence his previous conviction as a felon in possession of a firearm to show that he knowingly possessed the firearm found in Robinson's car. Rule 404(b)(1) states: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But Rule 404(b)(2) does allow such evidence to be admitted for other purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." We review for abuse of discretion the

5

district court's decision to admit evidence. *See United States v. Moran*, 503 F.3d 1135, 1143 (10th Cir. 2007).

Defendant's argument is contrary to controlling precedent. In *Moran*, also a prosecution for felon in possession of a firearm, the defendant was stopped while driving an SUV. There were no other occupants. *See id.* at 1139. The officer who stopped him saw in the back seat "a rifle stock sticking out of an unzipped rifle case." *Id.* When asked who owned the rifle, he said it was his girlfriend's; when asked if it was loaded, he said it was; and when asked why he had the rifle, he said he always kept one in his vehicle. *See id.* The prosecution offered into evidence the defendant's prior conviction as a felon in possession of a firearm. *See id.* We held that the evidence was properly admitted. *See id.* at 1144. Although evidence of the prior conviction could cause unfair prejudice by "allowing the jury to infer criminal propensity," *id.* at 1145 (internal quotations omitted), we noted the probative value of the evidence in that "the fact that [defendant] *knowingly* possessed a firearm in the past supports the inference that he had the same knowledge in the context of the charged offense," *id.* at 1144.

Defendant tries to distinguish *Moran* on the ground that the facts there were different. He points out that in *Moran* the defendant was the sole occupant of the vehicle, that his girlfriend owned it, that he had regularly been seen driving the vehicle in the past, and that the rifle was in plain view. *See id.* at 1138–39. But he fails to explain why those facts would make the prior conviction more probative than in this case. And, in our view, the facts that Defendant was not the sole occupant and that the gun was not in plain view

6

actually make the question of knowing possession more debatable in this case, which weighs in favor of admission despite the possibility of unfair prejudice; when an issue is not seriously disputed, there is little justification for admitting evidence that risks unfair prejudice. *See* Fed. R. Evid. 403 (relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice"); *United States v. Tan*, 254 F.3d 1204, 1209 (10th Cir. 2001) (prior-conviction evidence that might otherwise be inadmissible under Rule 403 was admissible because of the absence of other strong evidence on the principal contested issue at trial).

Following *Moran*, we hold that the district court did not abuse its discretion in admitting Defendant's prior conviction. We caution, however, that courts should be hesitant to admit such evidence because of the great danger of unfair prejudice. Indeed, the district court here would not have abused its discretion had it refused to admit the evidence of the conviction. *See United States v. McGlothin*, 705 F.3d 1254, 1263–64 n.13 (10th Cir. 2013); *United States v. Moore*, 709 F.3d 287, 295–96 (4th Cir. 2013) ("The evidence of Moore's possession of a different type of firearm, introduced via Rule 404(b), served only to establish Moore's criminal disposition and was therefore inadmissible.").

### C.     Penalty Citation in Jury Instructions

The indictment stated that Defendant violated "Title 18, United States Code, Section 922(g)(1), the penalty for which is found in Title 18, United States Code, Section 924(a)(2)." R., Vol. 1 at 10. Defendant contends that the district court erred when it

7

allowed the indictment, including this citation to the statutory penalty, to be included in the jury instructions. He points out that § 924(a)(2) states that the maximum punishment is 10 years' imprisonment, much less than he actually faced under the ACCA; and he suggests that a juror could have looked up the cited provision and been more likely to find him guilty of the crime based on the belief that the punishment would not be as harsh as it really was.

This is one of the more imaginative arguments presented to this court. We are not persuaded. There is no indication in the record, or even an allegation by Defendant, that any juror was familiar with or looked up (or even could have looked up) the cited statutory provision during deliberations. Moreover, the district court instructed the jury that it "should not be concerned with punishment in any way and should not consider it in arriving at [the] verdict." *Id.* at 70. "Juries are presumed to follow the instructions they are given." *United States v. Weiss*, 630 F.3d 1263, 1275 (10th Cir. 2010). Thus, even if there was error in including the reference to § 924(a)(2) in the instructions, there is no reason to believe that the reference affected the jury.

### D. Investigative-Techniques Instruction

Defendant asserts that the jury was erroneously instructed that the government was not required to use all the investigative techniques available to it. He argues that the instruction undercut his theory that the government did not discover the real possessor of the gun because it conducted a faulty investigation. But the instruction did not prevent him from arguing that a better investigation would have exonerated him. As we said in

*United States v. Cota-Meza*, 367 F.3d 1218, 1223 (10th Cir. 2004), "Merely because the instruction informs the jury that the utilization of all known investigative methods is not legally *required* does not prevent the jury from concluding that a failure to employ certain investigative methods nevertheless detracts from the credibility of the government's evidence." We reject Defendant's argument.

E.     **Substantive Reasonableness of the Sentence**

Defendant argues that his sentence is substantively unreasonable because it is longer than necessary to accomplish the sentencing goals found in 18 U.S.C. § 3553(a). He argues that his sentence is too high because there is no evidence that he used the gun in an offensive manner; he was found with no other illicit items; his ADHD has led to his problems with the law, but he is fundamentally a good person; his criminal history shows that he has not been arrested for violent conduct, so he is not a danger to the community; and the sentence impermissibly punishes him mostly for past crimes, not the current crime. But a sentence, such as Defendant's, that falls below the correctly calculated guideline range is "presumptively reasonable against an attack by a defendant claiming that the sentence is too high." *United States v. Balbin-Mesa*, 643 F.3d 783, 788 (10th Cir. 2011) (internal quotation marks omitted). Defendant's arguments are not sufficient to rebut the presumption here.

F.     **Armed Career Criminal Act**

Defendant was sentenced under the ACCA, which increases the penalty for being a felon in possession of a firearm if the defendant has three previous convictions for a

9

"violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). He concedes that he had two convictions for serious drug offenses under the ACCA. But he challenges the characterization of a 2007 Oklahoma conviction for conspiracy as a serious drug offense. Our review is de novo. *See United States v. Delossantos*, 680 F.3d 1217, 1219 (10th Cir. 2012).

The ACCA provides that a state crime is a "serious drug offense" if it "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (internal quotation marks omitted). To determine whether a conviction qualifies under the ACCA, the court will ordinarily apply what is called the "categorical approach," which looks only at the elements of the statute under which the defendant was convicted. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013); *United States v. Smith*, 652 F.3d 1244, 1246 (10th Cir. 2011) (categorical approach applies to both violent felonies and serious drug offenses). In other words, a conviction qualifies only if all violations of the statute would qualify, regardless of "how [the specific] offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008).

Under the categorical approach, Defendant's conspiracy conviction would not be a conviction of a serious drug offense. Oklahoma's general conspiracy statute states: "If two or more persons conspire . . . [t]o commit any crime[,] . . . they are guilty of a

10

conspiracy." Okla. Stat. Ann. tit. 21, § 421(A) (West 1999). Obviously, the statute could be violated in many ways that have nothing to do with drugs.

At times, however, a court may use what is termed the "modified categorical approach" to determine whether a prior conviction is for a qualified offense under the ACCA. This approach is warranted when a statute is divisible: that is, when it "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile." *Descamps,* 133 S. Ct. at 2281 (internal quotation marks omitted). Because an offense may not qualify under the ACCA under all the alternatives (say, entry into a building but not entry into a car), the court examines certain definitive underlying documents to determine which alternative the defendant's conviction satisfied. *See id.* at 2283–84. We have not created an exhaustive list of which documents can be examined under the modified categorical approach, but the Supreme Court has stated that permissible documents include "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson v. United States*, 559 U.S. 133, 144 (2010). This circuit has also considered admissions of defense counsel. *See United States v. Ventura-Perez,* 666 F.3d 670, 676 (10th Cir. 2012).

The issue before us is whether the modified categorical approach can be used to determine whether the conspiracy committed by Defendant is a serious drug offense. The information to which Defendant pleaded guilty states the charge as "conspiracy to manufacture a controlled dangerous substance" and states that Defendant "conspir[ed]

11

and agree[d] . . . to commit the crime of Manufacture of Methamphetamine." R., Vol. 1 at 104 (full capitalization omitted). Is it permissible for the court to take into account the drug-related specifics of this conspiracy charge?

### 1. *Descamps*

Determining whether a court is permitted to use the modified categorical approach can be difficult. The Supreme Court's most recent guidance on the question came in *Descamps*, 133 S. Ct. 2276. Descamps was convicted of being a felon in possession of a firearm. *See id.* at 2282. One of his previous convictions was for burglary under a California statute. *See id.* A state offense is a violent felony under the ACCA if it "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The government argued that Descamps's prior conviction was a violent felony because it was a burglary. *See Descamps*, 133 S. Ct. at 2282. *Burglary* is not defined by the ACCA, but the Supreme Court has construed the term to mean generic burglary—"an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *James v. United States*, 550 U.S. 192, 197 (2007) (internal quotation marks omitted).

Descamps argued that his burglary conviction did not qualify under the ACCA because the California offense is broader than generic burglary. *See Descamps*, 133 S. Ct. at 2282. The California statute "provides that a person who enters certain locations with intent to commit grand or petit larceny or any felony is guilty of burglary." *Id.*

12

(internal quotation marks omitted).  Unlike the definition of generic burglary, the statutory definition does not require the entry into the location to be unlawful or unprivileged.  *See id.*  Descamps argued that because some crimes under the statute would fit the generic definition of burglary and others would not, a conviction under the statute would not qualify as a violent felony under the ACCA and the court was precluded from using the modified categorical approach to examine the facts of conviction.  *See id.*

The Ninth Circuit disagreed, relying on its recent en banc opinion in *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011).  In that case the Ninth Circuit determined that the modified categorical approach applies to "missing element" statutes that are "missing an element of the generic crime."  *Id.* at 925 (internal quotation marks omitted).  For example, statutory rape under federal law requires "an age difference of at least four years between the defendant and the minor."  *Id.* (emphasis and internal quotation marks omitted).  Because several California statutory-rape offenses do not require this age difference, instead criminalizing sexual acts with anyone under a certain age regardless of the age of the perpetrator, they are missing-element statutes. [1]  *See id.*

---

[1] The Ninth Circuit also defined "broad element" statutes, which "contain[] an element that encompasses the generic element but cover[] a broader range of conduct than the generic element."  *Aguila-Montes de Oca*, 655 F.3d at 925 (internal quotation marks omitted).  Its opinion, however, then spoke only in terms of missing-element statutes because "the distinction between the 'broad element' and 'missing element' cases is only of limited conceptual use and has no legal significance."  *Id.*  To illustrate this point, it gave the example of a state pornography statute that punished possession of pornography

Continued . . .

The *Aguila-Montes* court continued its analysis with a discussion of divisible

statutes, which it stated (correctly) are clearly amenable to the modified categorical

approach. *See id.* at 926. "A divisible statute," it said, "contains a list of statutory

phrases, at least one of which satisfies an element of a given generic crime." *Id.* at 924.

As an example, "if the statute of conviction contains the elements of (1) harmful contact

and (2) use of a gun or an axe, the modified categorical approach can be used to

determine whether the trier of fact was actually required to find that the defendant used a

gun." *Id.* at 927. After analyzing the case law and concluding that Supreme Court

precedent left open whether the modified categorical approach is limited to divisible

statutes, the court explained why it thought missing-element statutes should be treated the

same. *See id.* at 927–37.

The linchpin of the Ninth Circuit's analysis was that missing-element statutes are

not "meaningfully different" from divisible statutes. *Id.* at 927. The court reasoned that a

missing-element statute just creates a hypothetical list of alternatives rather than an

explicit list. *See id.* "For example, a statute that requires use of a 'weapon' is not

meaningfully different from a statute that simply lists every kind of weapon in existence."

*Id.* "Because we have little difficulty discerning that someone convicted of assault with a

_____

and a federal sentencing enhancement that increased punishment for previous convictions
of possession of child pornography. *See id.* at 926. It stated, "[T]he statute of conviction
could be characterized either as containing the 'broad' element of pornography (including
both adult and child pornography) or as 'missing' the element of involvement of minors."
*Id.*

14

'weapon' may have used a gun, the modified categorical approach could apply in the same way it does to a conviction under a divisible statute to determine if the trier of fact was actually required to find that the defendant used a gun." *Id.* The court said that the inquiry—based on the charging document, plea agreement, and other documents that can be examined in the modified categorical approach—is essentially the same whether the statute is divisible or a missing-element statute. *See id.* at 937. The inquiry is still whether "the factfinder [was] *actually required to find the facts satisfying* the elements of the generic offense." *Id.* at 936. It explained:

> In both cases, courts must rely on the same set of documents reflecting the facts necessarily found by the trier of fact in support of the conviction; they cannot look to any different documents or facts when considering a conviction under a missing-element statute than they would when reviewing a conviction under a divisible element statute. If the defendant could not have been convicted of the offense of conviction *unless* the trier of fact found the facts that satisfy the elements of the generic crime, then the factfinder necessarily found the elements of the generic crime.

*Id.* at 937. Applying the *Aguila-Montes* approach, the Ninth Circuit in *Descamps* held that the defendant had been convicted of generic burglary. *See United States v. Descamps*, 466 F. App'x 563, 565 (9th Cir. 2012).

The Supreme Court reversed. It held that the modified categorical approach cannot be used "when the crime of which the defendant was convicted has a single, indivisible set of elements." *Descamps*, 133 S. Ct. at 2282. That approach is acceptable only "when a statute lists multiple, alternative elements, and so effectively creates several different crimes." *Id.* at 2285 (ellipses and internal quotation marks omitted). In that

15

context the prosecutor "must generally select the relevant element from [the statute's] list of alternatives[;] . . . [a]nd the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." *Id.* at 2290. Thus the modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id.* at 2285.

The Court identified three reasons for adopting this elements-based focus. First, the text of the ACCA speaks in terms of a defendant's "previous convictions." *Id.* at 2287 (internal quotation marks omitted). This focus on convictions, rather than the defendant's acts, implies that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* (internal quotation marks omitted). In particular, the statute instructs courts "to treat every conviction of a crime in the same manner." *Id.*

Second, the categorical approach avoids a collision with the Sixth Amendment requirement that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2288 (internal quotation marks omitted). A court examining the facts of a defendant's prior offense to determine whether the ACCA should be applied to increase the defendant's sentence could make findings that no jury has made. In contrast, the statutory elements of the prior offense—the sole subject of inquiry under the categorical approach—must be found by the jury. "[T]he only facts the court can be sure the jury . . .

16

found [unanimously and beyond a reasonable doubt] are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances." *Id.*

Finally, the Court observed that it is often difficult for courts to determine the facts underlying prior convictions and doing so can be unfair, particularly when the defendant may not have thought it important to challenge collateral facts that were irrelevant to guilt under the statute. *See id.* at 2289. Under the Ninth Circuit's approach, it said, "sentencing courts . . . would have to expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy, or a prosecutor showed at trial, facts that, although unnecessary to the crime of conviction, satisfy an element of the relevant generic offense." *Id*. The prospect of such "daunting difficulties and inequities" demands a different approach. *Id.* (internal quotation marks omitted). Only when a statute is divisible can the modified categorical approach satisfy these three policy considerations, as use of the modified categorical approach in that situation will conform to statutory language, satisfy the Sixth Amendment, and lead to fair results. *See id.* at 2289–91.

Accordingly, the Court rejected application of the modified categorical approach when the statute of conviction has a single set of elements, whether it "has an overbroad or missing element." *Id.* at 2292. The Court did not, however, suggest in any way that it was retreating from its application of that approach in previous cases: When a statute defines the offense "alternatively, with one statutory phrase corresponding to the generic crime and another not," *id.* at 2286, courts may examine documents such as an indictment

17

or plea agreement to determine "which statutory phrase was the basis for the conviction," *id.* at 2285 (internal quotation marks omitted).

### 2. Cross-References to Other Statutes

That leads us, however, to another question. Must the alternative "statutory phrases" appear in the statute of conviction if the court is to apply the modified categorical approach? In particular, is that approach proper when the statute of conviction cross-references other statutes? For example, a state statute could define a crime of assault that involves use of a "weapon." Assume that the crime would be ACCA-eligible only if the weapon used was a gun. If another provision of that state's criminal code defines "weapon" as a "gun, knife, or bat," then the definition of the crime contains a list of alternatives.

In our view, such a statute is divisible. Although we did not use the word *divisible*, we previously held as much. In *Ventura-Perez*, 666 F.3d at 670, we considered a Texas burglary statute that referred to entry into a "habitation." "Habitation" was defined elsewhere in the Texas code as "a structure or vehicle that is adapted for the overnight accommodation of persons . . . ." *Id.* at 673. Applying the modified categorical approach, we held that "[i]t is irrelevant that here the statutory phrase is in a definition section of the state penal code, rather than in a section stating a criminal offense," because the definition was "incorporated into the offense section." *Id.* at 676.

Other courts have explicitly found similar statutes divisible. Recently, the Ninth Circuit in *Coronado v. Holder*, 759 F.3d 977 (9th Cir. 2014), applied the modified

18

categorical approach to hold that an alien's conviction under a California drug statute rendered him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II). Under the categorical approach the conviction could not be used to show that the alien was inadmissible, because the conviction could have been for possession of khat, which is not a substance banned by the federal Controlled Substances Act (CSA). *See id.* at 982–83. But the court found the California statute divisible because it "identifies a number of controlled substances by referencing various California drug schedules and statutes and criminalizes the possession of any one of those substances." *Id.* at 985; *accord Ragasa v. Holder*, 752 F.3d 1173, 1176 (9th Cir. 2014) (applying the identical test to determine that Hawaii drug statute is divisible).

Similarly, the Sixth Circuit considered an Ohio incitement-to-violence statute, which criminalizes "knowingly engaging in conduct designed to urge or incite another to commit any offense of violence" under certain circumstances. *United States v. Denson*, 728 F.3d 603, 608 (6th Cir. 2013) (brackets and internal quotation marks omitted). A different section of the Ohio criminal code defined *offense of violence* "and set[] forth assorted categories of qualifying offenses." *Id.* Applying *Descamps*, the court ruled that the "statute of conviction" was divisible because it "turn[ed] on the particular offense of violence underlying the defendant's inciting-violence conviction." *Id.* at 612 (internal quotation marks omitted).

We also note that two other circuits adopted the same analysis before *Descamps*. The Third Circuit considered a Delaware statute that prohibited wearing body armor

19

"during the commission of a felony" and found that the statute "incorporates by reference the disjunctive list of all felonies," thereby justifying use of the modified categorical approach. *United States v. Gibbs*, 656 F.3d 180, 187 (3d Cir. 2011) (internal quotation marks omitted). And the Seventh Circuit found divisible an Illinois armed-violence statute, which "appli[ed] whenever a person commits a felony while armed with a dangerous weapon." *United States v. Fife*, 624 F.3d 441, 446 (7th Cir. 2010), *abrogated on other grounds by United States v. Miller*, 721 F.3d 435, 438 (7th Cir. 2013). It explained, "There is no need that each potential felony be explicitly listed and separately enumerated as a subsection, because the practical effect is the same." *Id.*

This approach is consistent with pre-*Descamps* Supreme Court precedent. In *James*, 550 U.S. at 196, the issue was whether the defendant's previous conviction for attempted burglary, "in violation of Fla. Stat §§ 810.02 and 777.04 (1993)," qualified under the ACCA as a violent felony. Section 810.02 was Florida's burglary statute. *See id.* at 197. Section 777.04 was Florida's general attempt statute, which states: "A person who attempts to commit *an offense prohibited by law* and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt . . . ." Fla. Stat. § 777.04(1) (emphasis added). The attempt statute is not divisible on its face. But it references all state criminal offenses, and the Supreme Court did not hesitate to look to the specific offense stated in the charging document—burglary. The Court held that the offense of conviction was a violent felony. *See James*, 550 U.S. at 212. Although it said

20

nothing about whether § 777.04(1) was divisible, a contrary determination would render the decision inconsistent with *Descamps* because the Court looked at the charging document to determine which specific crime was allegedly attempted. To hold that such statutes are not divisible because they do not explicitly list every underlying felony in their text would mean that state crimes such as attempt, aiding and abetting, solicitation, or (as in this case) conspiracy, would ordinarily not qualify as ACCA predicates.

### 3. Application to Oklahoma Conspiracy Statute

We now turn to the application of divisibility doctrine to this case. In 2007, Defendant pleaded guilty to a violation of Oklahoma's general conspiracy statute, which reads: "If two or more persons conspire . . . [t]o commit any crime[,] . . . they are guilty of a conspiracy." Okla. Stat. Ann. tit. 21, § 421(A). Like the Florida attempt statute in *James*, the Oklahoma conspiracy statute cross-references all state criminal offenses. We hold that it is divisible for purposes of the ACCA. The Oklahoma legislature could have chosen to write out, as part of the conspiracy statute, a list of all Oklahoma crimes. But there was no reason to do so because Oklahoma already has a finite list of conduct that it considers criminal: the crimes set forth in the Oklahoma Criminal Code. Although this list is lengthy, it is not "hypothetical." *Descamps*, 133 S. Ct. at 2290. By cross-referencing the state's criminal code, the general conspiracy statute lays out "multiple, alternative versions of the crime" of conspiracy, according to what underlying crime provides the conspiracy's object. *See id.* at 2284.

21

Because the Oklahoma conspiracy statute is divisible, we examine the specifics of Defendant's conviction. The object of the alleged conspiracy was the manufacture of methamphetamine. The amended information to which he pleaded guilty listed the charge as "conspiracy to manufacture a controlled dangerous substance" and stated that Defendant "conspire[ed] and agree[ed] . . . to commit the crime of Manufacture of Methampehtamine." R., Vol. 1 at 104 (full capitalization omitted). Likewise, in his plea colloquy Defendant stated, "I conspired to manufacture methamphetamines." Aplee. Br. at 73.

The final step in this analysis is easy. Does the crime "conspiracy to manufacture methamphetamine" satisfy the definition of *serious drug offense* in the ACCA? A state crime is a "serious drug offense" if it "involv[ed] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (internal quotation marks omitted). We agree with the other circuits that have read the "involving manufacturing" language broadly to include attempts to manufacture or conspiracy to manufacture. *See, e.g.*, *United States v. Williams*, 488 F.3d 1004, 1009 (D.C. Cir. 2007) (because the word *involving* is expansive, attempt to distribute cocaine is a serious drug offense); *United States v. McKenney*, 450 F.3d 39, 44 (1st Cir. 2006) (Congress' use of the "broad word 'involving'" shows its intent to cover state drug attempt and conspiracy convictions). We therefore conclude that conspiracy to manufacture methamphetamine satisfies the ACCA definition. *See, e.g.*, *United States v.*

22

*Bynum*, 669 F.3d 880, 887 (8th Cir. 2012) ("[A] mere agreement to distribute a controlled substance, even absent some overt act in furtherance of the conspiracy . . . is sufficient to constitute a serious drug offense under the ACCA." (citation omitted)); *McKenney*, 450 F.3d at 45. Defendant does not dispute the point.[2]

---

[2] The parties also argue over whether the requirement of an overt act in a conspiracy statute changes our analysis about whether to use the modified categorical approach. This argument is based primarily on two of our decisions, *United States v. King*, 979 F.2d 801 (10th Cir. 1992), and *United States v. Brown*, 200 F.3d 700 (10th Cir. 1999). But these decisions do not alter our analysis. Neither addressed divisibility and neither informs our decision here. *King* considered whether conspiracy to commit armed robbery was a violent felony under the ACCA. *See* 979 F.2d at 801–02. The ACCA definition of violent felony has two alternatives. A crime can be a violent felony if it "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another" or if it "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). We first considered whether the conspiracy charge satisfied (i) and properly concluded that it did not because the offense did not require commission of an overt act and the conspiratorial agreement itself did not require the use or attempted use of force or a communicated threat. *See King*, 979 F.2d at 802–03. We then considered the residual clause of (ii), namely whether the conspiracy "present[ed] a serious potential risk of physical injury to another." Relying on our decision in *United States v. Strahl*, 958 F.2d 980 (10th Cir. 1992), which held that attempted burglary does not present such a risk, we held that the residual clause also was not satisfied. *See King*, 979 F.2d at 803–04. Our holding on the applicability of the residual clause is no longer good law, as *Strahl* was later overruled by *James*, 550 U.S. at 198. And our holding on the applicability of clause (i) is not inconsistent with our decision here because Defendant's offense could be a serious drug offense even if the offense did not require him to manufacture methamphetamine (it was enough that he *conspired* to do so.) As for *Brown*, it considered 18 U.S.C. § 924(c), which defines *crime of violence* very similarly to the ACCA's definition of *violent felony*. *See* 200 F.3d at 705–06. *Brown* held that conspiracy to carjack involved a substantial risk of physical harm, distinguishing *King* on the ground that the conspiracy statute in *Brown* required proof of an overt act—in that case, carjacking. *See id.* at 706.

23

### 4. Meaning of "Element"[3]

The above discussion would seem to resolve Defendant's claim. But a subtle issue remains. Yes, the various statutes cross-referenced by the Oklahoma conspiracy statute provide the alternative "statutory phrases" necessary for application of the modified categorical approach. But *Descamps*, rather than just using the language *statutory phrases*, generally speaks in terms of "alternative elements" or "potential offense elements." *Descamps*, 133 S. Ct. at 2281, 2283, 2284, 2285. In what sense must the alternative statutory phrases be elements of the statutory offense of which the defendant was convicted? The answer to this question is of critical importance, because if the alternatives are not "elements" (in the sense of the word used by *Descamps*), then the modified categorical approach is inapplicable. In particular, if the specific object of the conspiracy is not an element of the Oklahoma crime of conspiracy, then we cannot say that Defendant committed a serious drug offense no matter how clear it is that the object of his conspiracy was the manufacture of methamphetamine. We proceed to offer our answer.

As the Supreme Court has stated, "Calling a particular kind of fact an 'element' carries certain legal consequences. [For example,] a jury . . . cannot convict unless it unanimously finds that the Government has proved each element." *Richardson v. United States*, 526 U.S. 813, 817 (1999) (citation omitted). The fact that a criminal statute lists

---

[3] Judge Seymour does not join § II(F)(4).

alternatives does not necessarily mean that the alternatives are alternative elements in that sense. If several alternatives are presented to the jury, the jurors may not need to agree on which alternative act was committed by the defendant. The alternatives may be simply alternative "means" of committing the offense; and the jurors could disagree on the means but still properly convict. A striking example is provided by *Schad v. Arizona*, 501 U.S. 624 (1991). The defendant was convicted of first-degree murder and sentenced to death. The applicable Arizona statute defined *first-degree murder* as "murder which is perpetrated by . . . premeditated killing, or which is committed . . . in the perpetration of [one of several listed felonies]." *Id.* at 628 n.1. The defendant argued that his jury should have been instructed that they needed to agree unanimously on a single theory of first-degree murder. *See id.* at 628–29. The Supreme Court affirmed. In another jurisdiction the two alternatives might be considered as alternative elements, and thus the jury would have to be unanimous on at least one of the alternatives. But "under Arizona law neither premeditation nor the commission of a felony is formally an independent element of first-degree murder; they are treated as mere means of satisfying a *mens rea* element of high culpability." *Id.* at 639 (emphasis added). Therefore, it was enough that the jury was unanimous in deciding that the defendant "murdered either with premeditation or in the course of committing a robbery." *Id.* at 630.

If *Descamps* adopted this traditional view of what an element is, then the first-degree-murder statute in Arizona would not be divisible, and as a general matter a court could never use the modified categorical approach without first determining whether the

alternatives set forth in a criminal statute are alternative elements or just alternative means. As Justice Alito explained in his dissent in *Descamps*, such an inquiry would often be difficult because of the dearth of case law regarding whether a statute's alternatives are alternative means or alternative elements. *See Descamps*, 133 S. Ct. at 2301–02 (Alito, J., dissenting).

This distinction between elements and means could have important consequences in applying the ACCA. Consider the previously discussed Ninth Circuit decision in *Coronado*. Under the categorical approach the California conviction did not qualify as a serious drug offense because possession of khat would not violate the federal CSA, so not all violations of the California statute would be serious drug offenses. That is, one could not look solely at the offense of conviction (violation of the California statute) and know that the defendant must have committed a serious drug offense. But the modified categorical approach could not be used if the identity of the drug possessed by the defendant is not an element of the California drug statute. And in the *Richardson*/*Schad* sense of that word, the identity of the drug apparently is not an element. California case law suggests that the jury need not agree on which controlled substance the defendant possessed. In *Ross v. Municipal Court*, 49 Cal. App. 3d 575 (1975), a defendant was charged with using and being under the influence of a controlled substance. He challenged the complaint on the ground that it did not identify the controlled substance. The court, noting that the complaint may not have identified the substance because it was not known, held that the complaint was adequate even though "it did not tell [the

26

defendant] the *means* by which he committed the crime." *Id.* at 579 (emphasis added); s*ee People v. Romero*, 64 Cal. Rptr. 2d 16, 17, 22 (Cal. Ct. App. 1997) (stating that in a prior case the court did not have to decide whether the defendant had sold mescaline or had sold LSD because the defendant "was guilty of a single offense, sale of a controlled substance"; pleading a particular substance "does not transmute the offense of possession of a controlled substance into as many different offenses as there are controlled substances"). (There is also federal-court authority indicating that the identity of the specific controlled substance is not an element of a crime under the CSA. In *United States v. Dolan*, 544 F.2d 1219, 1223–24 (4th Cir. 1976), it was unclear whether the substance was mescaline or LSD, but "[t]he gist of the charge . . . was that [the defendant] travelled in interstate commerce to engage in an unlawful enterprise involving a Schedule I controlled substance, and both mescaline and LSD are Schedule I controlled substances," *id.* at 1224; *cf. United States v. Johnson*, 130 F.3d 1420, 1428 (10th Cir. 1997) ("The identity of the involved controlled substance as being cocaine base rather than simply cocaine is not an element of any [21 U.S.C.] section 842(a)(1) offense." (internal quotation marks omitted)).)

Nevertheless, we think that the Ninth Circuit got it right in *Coronado*. It is necessary to keep in mind the context in which *Descamps* used the terms *alternative elements* and *potential offense elements*. The key feature of divisibility in *Descamps* is that "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives[;] . . . [a]nd the jury, as instructions in the

27

case will make clear, must then find that element, unanimously and beyond a reasonable doubt." 133 S. Ct. at 2290. In that circumstance (when only one alternative appears in the charging document or plea agreement), the modified categorical approach "permits a court to determine which statutory phrase was the basis for the conviction." *Id.* at 2285 (internal quotation marks omitted). The Court's three reasons for applying the categorical approach (or the modified version) are satisfied. First, everyone convicted when the charge chooses a particular alternative is treated the same. Second, the reviewing court can be sure that in a jury trial the jury had to find that the statutory phrase was satisfied because there was no alternative ground available to it; similarly, for a guilty plea. And third, there is no need for judicial factfinding and there can be no unfairness to the defendant when he or she knew which statutory phrase formed the basis of the conviction. In this context, there is no need to worry about the *Richardson*/*Schad* distinction between means and elements. Perhaps there will be occasions in which some jurors could have convicted under one of the statutory phrases while other jurors convicted under a different phrase. But the Court has not addressed that possibility and we need not predict its analysis to resolve this case. *Cf. United States v. Zuniga-Soto*, 527 F.3d 1110, 1122 (10th Cir. 2008) (statute's *mens rea* component was "grammatically divisible," but there was no evidence regarding the type of *mens rea* on which the conviction was based).

Moreover, we can think of no better shorthand than the word *elements* to capture the Court's concerns in explaining the proper sphere of the modified categorical

28

approach. At times (as with the California drug statutes) the alternative statutory phrases may not be "elements" in the full sense of the term as used in *Richardson* and *Schad*, but for the purposes of modified-categorical-approach analysis, that "shortcoming" is generally irrelevant. We think that is the thrust of the Court's response to Justice Alito's *Descamps* dissent, in which he argued that the Court's precedents had not required that the alternative statutory phrases be elements in the traditional sense. The Court wrote:

> [I]f the dissent's real point is that distinguishing between 'alternative elements' and 'alternative means' is difficult, we can see no real-world reason to worry. Whatever a statute lists (whether elements or means), the documents we approved in *Taylor* and *Shepard*—*i.e.*, indictment, jury instructions, plea colloquy, and plea agreement—would reflect the crime's elements. So a court need not parse state law in the way the dissent suggests: When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.

*Descamps*, 133 S. Ct. at 2285 n.2. Along the same lines, the Court later said:

> A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives. And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt. . . . A later sentencing court need only check the charging documents and instructions . . . to determine whether in convicting a defendant under that divisible statute, the jury necessarily found that he committed the ACCA-qualifying crime.

*Id.* at 2290 (citation omitted). This explains, we believe, why no Supreme Court opinion addressing the modified categorical approach has ever found it appropriate to examine whether an alternative statutory phrase is an "element" in the sense of the word used in *Richardson* and *Schad*.

29

### 5.	Alternative Analysis

Nevertheless, our conclusion may be wrong.  Therefore, we address whether Oklahoma's general conspiracy statute is divisible even if we have misconstrued *Descamps*.  That is, we inquire whether the object of the conspiracy is an element of the Oklahoma offense in the traditional sense:  Must the jury agree unanimously on what crime the conspirators agreed to commit?  The question may have a negative answer in some jurisdictions.  *See e.g.*, *People v. Vargas*, 110 Cal. Rptr. 2d 210, 247 (2001) ("[T]he specific crimes that constitute the object of the conspiracy are not elements of the conspiracy.  Rather, they are the means by which the purpose of the conspiracy was to be achieved."); *id.* at 245 ("So long as there is unanimity that crime was the object of the agreement, conspiracy is established regardless of whether some jurors believe that crime to be murder and others believe that crime to be something else.").  But we answer the question "yes" for this statute.

We have not found an opinion by an Oklahoma court explicitly stating that the jury must unanimously agree beyond a reasonable doubt on the object of the agreement that constitutes the conspiracy.  But decisions of the state's highest criminal court, the Oklahoma Court of Criminal Appeals (OCCA), are suggestive.  One opinion said that "[t]he statutory elements of a conspiracy are (1) an agreement to commit the *crime charged* and (2) an act by one or more of the parties in furtherance of the conspiracy, or to effect its purpose." *Davis v. State*, 792 P.2d 76, 81 (Okla. Crim. App. 1990) (emphasis added).  Moreover, a formal charge of conspiracy in Oklahoma must allege the object of

30

the conspiracy. *See Williams v. State*, 182 P. 718, 724 (Okla. Crim. App. 1919) ("[W]here a conspiracy to commit a crime is charged, it is necessary that the information contain, in addition to an allegation of the conspiracy to *commit the particular crime*, an allegation of some overt act or acts done in furtherance and pursuance thereof." (emphasis added)). And the Oklahoma Uniform Jury Instructions, which are "prescribe[d] and institute[d]" by the highest courts in Oklahoma (the OCCA and the Supreme Court), *see* Okla. Stat. Ann. tit. 12, § 577.1, state, "Where the agreement is to commit an offense that is punishable under the criminal law, the elements of that offense must be the subject of a jury instruction." Okla. Unif. Jury Instr. CR 2-19 cmt.

We agree with the Fourth Circuit that to determine the elements of an offense, we should "consider how [the state's] courts generally instruct juries with respect to that offense." *United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013) (referring to court-approved instructions to determine whether "'offensive physical contact' and 'physical harm' are alternative elements of the completed battery form of second-degree assault"); *see also Denson*, 728 F.3d at 612 (examining Ohio pattern jury instruction stating that "[t]he court must instruct the jury on the elements of the applicable offense of violence as charged in the indictment" to determine that Ohio inciting-to-violence statute is divisible (internal quotation marks omitted)). Based on the above Oklahoma authority, it appears that an Oklahoma jury must agree unanimously on the crime the defendant has conspired to commit.

31

Also supporting our conclusion is the Supreme Court's analysis in *Richardson*, which had to decide what the elements are of the federal continuing-criminal-enterprise (CCE) statute. *See* 526 U.S. at 815. That statute requires the government to prove that the defendant violated a federal drug law and that "such violation [was] a part of a continuing series of violations." *Id.* (internal quotation marks omitted). The question before the Court was whether the specific prior violations establishing the series were elements of the charged offense requiring juror unanimity. That is, did the jurors have to agree unanimously on each of the prior violations or could they simply agree that there had been a series of violations? *See id.* at 816. The Court held, as a matter of statutory interpretation, that the violations were elements. *See id.* at 819. It relied in part on the "statute's breadth," which "aggravate[d] the dangers of unfairness" that would arise from treating the violations simply as alternative means. *Id.* Because the statute cross-referenced a large number of other criminal offenses (all the drug offenses), not requiring juror unanimity could lead to two potential problems. *See id.* First, jurors could widely disagree about what the defendant actually did or did not do because the possible violations ranged from "simple possession [of a drug]" to "endangering human life [while unlawfully manufacturing a drug]." *Id.* Second, lack of a requirement of agreement "aggravates the risk" that jurors would not focus on factual detail and "simply conclude[e] from testimony, say, of bad reputation, that where there is smoke there must be fire." *Id.*

32

Although the Supreme Court's interpretation of a federal statute is not controlling in determining how Oklahoma would interpret its state law, the Court's analysis is persuasive. If an Oklahoma jury were permitted to convict a defendant for conspiracy without agreeing on the object of that conspiracy, it is likely that similar unfairness could occur. The Oklahoma conspiracy statute refers to an even broader range of underlying criminal activity than the CCE statute, and a jury that did not have to reach unanimity on the conspiratorial object could convict while holding starkly divergent views of the seriousness of the offense.

We conclude that even if the Supreme Court was using the term *elements* in its traditional sense, Oklahoma's conspiracy statute is divisible and the modified categorical approach is appropriate.

Finally, Defendant argues that it is unfair to use the modified categorical approach to examine his conspiracy conviction because he and "the other involved parties treated [the] crime outside the drug statutes," Aplt. Br. at 52, by charging him under the general conspiracy statute, Okla. Stat. Ann. tit. 21, § 421(A), rather than under the conspiracy statute restricted to drug offenses, *see* Okla. Stat. Ann. tit. 63, § 2-408 (1989). But there can be no doubt that he pleaded guilty to an offense that satisfied the requirements of the ACCA. Even if he did not anticipate this consequence of his conviction (and we have no evidence on that one way or the other), we see no unfairness. He knew the elements of the crime he was pleading guilty to, and that is the only fairness consideration discussed in *Descamps*.

33

Because Defendant had been convicted of three previous "serious drug offenses," the sentence enhancement under the ACCA was proper.

## III.    CONCLUSION

We AFFIRM Defendant's conviction and sentence.

12-6283 – *United States v. Trent*

**SEYMOUR**, Circuit Judge, concurring:

I join the opinion except for Section II(F)(4).