FILED
**United States Court of Appeals**
**Tenth Circuit**

**November 25, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LUZ DEL CARMEN MORONES-
QUINONES,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 14-9521
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

An immigration judge determined that Luz Del Carmen Morones-Quinones is

ineligible for cancellation of removal because she has been convicted of a crime

involving moral turpitude. The Board of Immigration Appeals agreed and dismissed

her appeal. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny

Ms. Morones-Quinones's petition for review because her conviction under the

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Colorado criminal impersonation statute, Colo. Rev. Stat. § 18-5-113(1)(e) (2010), is categorically a crime involving moral turpitude.

## I. Background

Ms. Morones-Quinones is a native and citizen of Mexico who entered the United States without inspection in December 1996. The Department of Homeland Security issued her a Notice to Appear in March 2011, charging her as removable because she is an alien present in the United States without having been admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Ms. Morones-Quinones conceded removability, but applied for cancellation of removal under 8 U.S.C. § 1229b(b). An immigration judge ("IJ") concluded she was ineligible for that relief. The IJ noted that an applicant for cancellation of removal must prove (among other things) that she has not been convicted of certain types of offenses, including a crime involving moral turpitude ("CIMT"). *See id.* § 1229b(b)(1)(C) (citing 8 U.S.C. § 1182(a)(2), which references CIMTs). The IJ concluded that Ms. Morones-Quinones's conviction under the Colorado criminal impersonation statute qualifies categorically as a CIMT. That statute provides, in pertinent part:

> (1) A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity and in such identity or capacity he:
>
> . . . .
>
> (e) Does any other act with intent to unlawfully gain a benefit for himself or another or to injure or defraud another.

- 2 -

Colo. Rev. Stat. § 18-5-113(1)(e) (2010).[1]  The IJ held, alternatively, that if a conviction under that section was not categorically a CIMT, the IJ was unable to perform a modified categorical analysis based on the limited documentation that Ms. Morones-Quinones had provided regarding her conviction.  The IJ denied her application for cancellation of removal and ordered her removed to Mexico.

Ms. Morones-Quinones appealed the IJ's decision to the Board of Immigration Appeals ("BIA").  The BIA held that all offenses under § 18-5-113(1)(e) inherently involve fraud and are therefore categorically CIMTs.  It noted that Ms. Morones-Quinones did not dispute "that when a person knowingly assumes a false identity and does an act with either (1) an intent to injure or (2) an intent to defraud, such an offense involves moral turpitude."  Admin. R. at 4.  The BIA therefore considered whether the third basis for a conviction under § 18-5-113(1)(e) also involves moral turpitude, specifically:  "knowingly assum[ing] a false or fictitious identity or capacity, and in such identity or capacity . . . [doing] any other act with intent to unlawfully gain a benefit for himself or another."  It concluded this language also inherently involves fraud because "[t]he person who commits this offense misrepresents [her] identity to obtain a benefit" and "[t]he individual or entity that distributes the benefit is deceived."  Admin. R. at 5.  The BIA also made an alternative finding that, under a modified categorical analysis,

---

[1]     Ms. Morones-Quinones was convicted under this version of the statute. *See* Admin. R. at 269.  A subsequent amendment renumbered § 18-5-113 and made minor language changes.  *See* Colo. Rev. Stat. § 18-5-113(1)(b)(II) (2011).

Ms. Morones-Quinones had not satisfied her burden to prove she had been convicted under a divisible portion of § 18-5-113(1)(e) that does not involve moral turpitude. The BIA therefore dismissed Ms. Morones-Quinones's appeal. She filed a timely petition for review.

## II. Scope and Standard of Review

Because a single member of the BIA entered a brief order dismissing Ms. Morones-Quinones's appeal pursuant to 8 C.F.R. § 1003.1(e)(5), we review the BIA's decision as the final order of removal. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We ordinarily lack jurisdiction to review orders regarding the granting of relief under § 1229b. *See* 8 U.S.C. § 1252(a)(2)(B)(i). But we have jurisdiction to review Ms. Morones-Quinones's contention that the BIA erred in concluding that she has been convicted of a CIMT because it raises a "question[] of law." *Id.* § 1252(a)(2)(D); *see also Diallo v. Gonzales*, 447 F.3d 1274, 1282 (10th Cir. 2006) (holding "question of law" refers to "a narrow category of issues regarding statutory construction" (internal quotation marks omitted)). "In our review of the agency's decision, we decide purely legal questions *de novo*." *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013) (internal quotation marks omitted).

## III. Discussion

"'[C]rime involving moral turpitude' is not defined by statute, [but] we have said that moral turpitude refers to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between man and man,

- 4 -

either one's fellow man or society in general." *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1268 (10th Cir. 2011) (internal quotation marks and brackets omitted). "[C]rimes in which fraud [is] an ingredient have always been regarded as involving moral turpitude." *Id.* (internal quotation marks omitted).

"To determine whether a state conviction is a [CIMT], we ordinarily employ the categorical approach." *Id.* at 1267. Under this approach, we consider only the statutory definition of the offense, without regard to the particular factual circumstances of the alien's conviction. *Id.*

> Our inquiry focuses on whether the state statute creates a crime outside of the generic definition of a listed crime in a federal statute. This requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.

*Id.* (citation and internal quotation marks omitted). A state conviction qualifies as a CIMT "only if all violations of the statute would qualify, regardless of how the specific offender might have committed it on a particular occasion." *United States v. Trent*, 767 F.3d 1046, 1052 (10th Cir. 2014) (internal quotation marks and brackets omitted). In other words, can the statute be violated in a manner that does not involve moral turpitude?

If a state conviction is not categorically a CIMT, in some cases we may turn to what is referred to as the "modified categorical approach." *Id.* But "[t]his approach is warranted [only] when a statute is divisible: that is, when it sets out one or more elements of the offense in the alternative." *Id.* (internal quotation marks omitted).

Under this approach we "examine[] certain definitive underlying documents to determine which alternative the [alien's] conviction satisfied," *id.*, i.e., whether she was convicted under alternative elements that qualify as a CIMT or alternative elements that do not.

### A.     Ms. Morones-Quinones's Contentions on Appeal

Ms. Morones-Quinones contends that § 18-5-113(1)(e) can be violated by conduct that does not involve moral turpitude; therefore, she asserts, that convictions under that statute are not categorically CIMTs.  She points to the language that criminalizes the knowing assumption of a false or fictitious identity or capacity, when in such identity or capacity a person "[d]oes any other act with intent to unlawfully gain a benefit for himself or another." *Id.*  She maintains that, unlike an "intent . . . to injure or defraud another," an "intent to unlawfully gain a benefit," *id.*, does not involve fraud, either explicitly or inherently.  If, as Ms. Morones-Quinones asserts, a conviction under § 18-5-113(1)(e) is not categorically a CIMT, she argues further that the BIA erred in applying the modified categorical approach in this case because the statute is not divisible.  Finally, if the statute is divisible, she maintains that she met her burden under the modified categorical approach to show that she was convicted under the "intent to unlawfully gain benefit" element, establishing that she was not convicted of a CIMT.

We hold that all convictions under § 18-5-113(1)(e) inherently involve fraud and are therefore categorically CIMTs. Thus, we reject Ms. Morones-Quinones' first contention and do not reach her remaining arguments.

**B.    Convictions Under § 18-5-113(1)(e) Are Categorically Crimes Involving Moral Turpitude**

According to Ms. Morones-Quinones, a conviction under § 18-5-113(1)(e) based on an "intent to unlawfully gain a benefit" is not a CIMT because "fraud" is not explicitly an element of that crime. But we held in *Wittgenstein v. INS*, 124 F.3d 1244 (10th Cir. 1997), that a New Mexico conviction for "willfully attempting to evade or defeat any tax or the payment thereof" was a CIMT. *Id.* at 1246 (internal quotation marks and brackets omitted). Although "fraud" was not an element of that offense, *see id.* (citing N.M. Stat. Ann. § 7-1-72), we reasoned that fraud was "an essential part of the crime," *id.* Hence, we agree with the BIA that, "where fraud is inherent in an offense, it is not necessary that the statute prohibiting it include the usual phraseology concerning fraud in order for it to involve moral turpitude." *Matter of Flores*, 17 I. & N. Dec. 225, 228 (BIA 1980). In determining whether an alien was convicted of a CIMT, other circuits have likewise analyzed whether the crime inherently involves fraud. *See Villatoro v. Holder*, 760 F.3d 872, 877-78 (8th Cir. 2014) (following *Matter of Flores*); *Yeremin v. Holder*, 738 F.3d 708, 714 (6th Cir. 2013) ("[E]ven if the statute does not explicitly require an intent to defraud or use the language of fraud, if fraud or deception is inherent in the nature of the offense, then the crime involves moral turpitude."); *Tijani v. Holder*, 628 F.3d 1071,

- 7 -

1076 (9th Cir. 2010) (holding fraud is implicit in offense of using "a knowing falsehood [to] obtain[] property, money, or credit").

Ms. Morones-Quinones next argues that a conviction under § 18-5-113(1)(e) based on an "intent to unlawfully gain a benefit" does not inherently involve fraud. Fraud is "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." Black's Law Dictionary (9th ed. 2009). Ms. Morones-Quinones acknowledges that all convictions under § 18-5-113(1)(e) require a finding of falsity. But she contends that "act[ing] with intent to unlawfully gain a benefit" does not necessarily induce someone else to act to his detriment.

We disagree because the benefit that the perpetrator seeks to gain by deceit under § 18-5-113(1)(e) must be *unlawful*. *Colorado v. Gonzales*, 534 P.2d 626, 629 (Colo. 1975) (holding the statute does not reach "lawful uses of assumed fictitious identities"; it proscribes only "false impersonations undertaken to accomplish *unlawful* purposes"). As the Colorado Supreme Court has explained, "A common sense reading and application of the [criminal impersonation] statute prohibits holding oneself out to a third party as being another person" *and* using that false or fictitious identity or capacity "under enumerated circumstances, purposes, or results that manifest completion of the prohibited act of impersonation." *Alvarado v. Colorado*, 132 P.3d 1205, 1207-08 (Colo. 2006). Therefore, under the plain meaning of § 18-5-113(1)(e), the perpetrator not only must lie about her identity or capacity,

but she must do so with the intent to gain a benefit from someone else that she cannot legally obtain. She therefore necessarily intends by her deceit to induce another person to act to his detriment by providing her the unlawful benefit.

Ms. Morones-Quinones nonetheless maintains that there is a realistic probability that § 18-5-113(1)(e) could be violated based on conduct not qualifying as moral turpitude. *See Rodriguez-Heredia*, 639 F.3d at 1267 (requiring more than "a theoretical possibility" that the State would apply its statute to conduct falling outside the generic definition of a crime).[2] She first argues there are circumstances under which a person could intend to unlawfully gain a benefit without also intending to induce someone else to act to his detriment. She asserts that, "factually speaking, even where a person is not lawfully entitled to employment, the use of a false identity to obtain employment merely allows the employer to hire . . . the best candidate for the position." Aplt. Opening Br. at 26. But this hypothetical ignores the perpetrator's aim in lying about her identity. She necessarily intends for the employer to rely on her deceit, to the employer's detriment, by hiring an applicant who is not the person she represents herself to be and who is not legally authorized to work.

---

[2] Ms. Morones-Quinones asserts that further fact finding on this issue is necessary because it is unclear from the record what unlawful benefit she intended to gain when she violated § 18-5-113(1)(e). But in applying the categorical approach, we do not consider the underlying facts related to her conviction. We examine only the statutory definition of the crime. *See Rodriguez-Heredia*, 639 F.3d at 1267.

Finally, Ms. Morones-Quinones asserts that the Colorado Supreme Court upheld the defendant's conviction under § 18-5-113(1)(e) in *Gonzales*, 534 P.2d at 627-29, despite a lack of evidence that he made a false statement with the intent to unlawfully obtain a benefit that did not belong to him. Consequently, she argues that *Gonzales* establishes that § 18-5-113(1)(e)[3] can be violated based on non-turpitudinous conduct. Ms. Morones-Quinones misconstrues the facts in *Gonzales*, in which the defendant obtained a money order intended for someone named Nora Gonzales by representing that he was her husband. *Id.* at 627. Nora testified at the trial that she was not the defendant's wife. *Id.* at 628. He argued on appeal that he had not assumed a false or fictitious identity or capacity because he had signed his own name when he received the money order intended for Nora. *Id.* at 629. The court rejected that contention, indicating that

> [t]here is no dispute that appellant misrepresented himself to be the husband of Nora Gonzales and that he received the money in that capacity, presumably for her. This was the assumed false or fictitious identity which enabled appellant to wrongfully obtain the funds which were not his, but were intended for Nora.

*Id.* *Gonzales* does not establish a realistic probability that Colorado would apply § 18-5-113(1)(e) to conduct outside the definition of a CIMT.

*See Rodriguez-Heredia*, 639 F.3d at 1267.

---

[3]      *Gonzales* applied a precursor statute with language nearly identical to § 18-5-113(1)(e). *See* 534 P.2d at 627 n.1, 628.

**C. We Need Not Reach Ms. Morones-Quinones's Remaining Contentions Regarding the Applicability of the Modified Categorical Approach**

The BIA held, alternatively, that Ms. Morones-Quinones had not satisfied her burden under the modified categorical approach to establish that she was convicted based on a portion of § 18-5-113(1)(e) that does not involve moral turpitude. She first argues that § 18-5-113(1)(e) cannot be analyzed using the modified categorical approach because it is not divisible. She contends that intent "to unlawfully gain a benefit," "to injure," and "to defraud" are "alternative means of satisfying an element, not alternative elements or separate crimes." Aplt. Opening Br. at 17; *see Trent*, 767 F.3d at 1058-61 (discussing the meaning of alternative "elements" in the divisibility analysis). But if the statute is divisible, Ms. Morones-Quinones asserts that she met her burden to show she was convicted based on the non-turpitudinous element of an "intent to unlawfully gain a benefit." We need not reach these contentions because we hold that any conviction under § 18-5-113(1)(e) inherently involves fraud and is categorically a CIMT. We therefore have no occasion to decide whether the modified categorical approach is warranted or to apply that approach in this case.

The petition for review is dismissed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge