**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBARO ELIAS TISTA,
      *Petitioner*,

            v.

ERIC H. HOLDER, JR., Attorney
General,
            *Respondent*.

No. 08-75167

Agency No.
A075-658-786

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 11, 2013[*]
San Francisco, California

Filed July 8, 2013

Before: Ferdinand F. Fernandez and Consuelo M.
Callahan, Circuit Judges, and Sarah S. Vance,[**] District
Judge.

Opinion by Judge Fernandez

---

[*] The panel unanimously finds this case suitable for decision without
oral argument. Fed. R. App. P. 34(a)(2).

[**] The Honorable Sarah S. Vance, Chief United States District Judge for
the Eastern District of Louisiana, sitting by designation.

## SUMMARY[***]

### Immigration

The panel denied Albaro Elias Tista's petition for review of the Board of Immigration Appeals' denial of his application for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act as a derivative beneficiary of his father.

The panel held that Elias, who applied for NACARA before he was twenty-one years old but was over twenty-one when his father was granted relief, failed to demonstrate that the Child Status Protection Act (CSPA), under which his age would be calculated from the date his father filed for relief, applies to NACARA. The panel held that the CSPA by its plain language makes no reference to NACARA, and that there is no basis to find that NACARA applicants come within CSPA's provisions. The panel also held that Elias did not demonstrate that the failure of Congress to apply the CSPA to NACARA violates the equal protection component of due process.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Ian E. Silverberg, Reno, Nevada, for Petitioner.

Tony West, Assistant Attorney General, Richard M. Evans, Assistant Director, Benjamin J. Zeitlin, Trial Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

**OPINION**

FERNANDEZ, Circuit Judge:

Albaro Elias Tista, a native and citizen of Guatemala, petitions for review of the Board of Immigration Appeals' (BIA) denial of his application for special rule cancellation of removal. In 1999, Elias applied under the Nicaraguan Adjustment and Central American Relief Act (NACARA)[1] for special rule cancellation of removal[2] on the basis that he was so entitled because he was a child whose father had been granted special rule cancellation of removal under NACARA. However, the BIA determined that Elias did not meet NACARA's definition of a child at the time that his father was granted relief, and that the Child Status Protection Act (CSPA)[3] did not apply to him. Elias asserts that the BIA

---

[1] Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105–100, 111 Stat. 2160 (1997).

[2] NACARA, § 203(b) at "(f)(1)."

[3] Child Status Protection Act, Pub. L. No. 107–208, 116 Stat. 927 (2002).

erred and that its decision violated his due process right to equal protection of the law.**[4]**  We deny the petition.

## BACKGROUND

Elias, who was born in January 1979, applied for special rule cancellation of removal in September 1999, about four months before his twenty-first birthday.  He stated:

> I am the . . . child (unmarried and under 21 years of age), unmarried son . . . of someone who has already applied for, or is presently filing with me for suspension of deportation or special rule cancellation of removal under NACARA.  If I am an unmarried son . . . my parent was granted suspension of deportation or special rule cancellation of removal when I was less than 21 years of age.

Elias entered the United States in January 1997 and his NACARA-eligible parent was his father, Tomas Elias Perez.

Elias' father was granted legal permanent residency under NACARA in March 2006.  Shortly before that, Elias, who was then twenty-seven years of age, was served with a notice to appear for a removal hearing.  He conceded removability, but argued that he was eligible for special rule cancellation of removal under NACARA as a beneficiary of his father.**[5]**

---

[4] U.S. Const. amend V.

[5] Elias also applied for other forms of relief, but those are not at issue in this petition for review.

The IJ denied relief because Elias was over twenty-one years of age by the time his father was granted special rule cancellation. Elias did not, and does not, contest the factual finding. He did, and does, assert that the CSPA definition of a child should apply to him and that his age should be calculated from the date that his father applied for relief. The IJ declared that the CSPA did not apply to Elias and that for him the issue "is not the timing of the filing of the application or petition but rather the age of the recipient beneficiary at the time when the NACARA application is approved." The IJ then declined to consider any "constitutional issues," citing "Board precedent in *Matter of C-*, 20 I. & N. Dec. 529 (BIA 1992)." Thus, the IJ denied Elias "special NACARA cancellation relief" and ordered him removed.

Elias appealed that determination to the BIA. The BIA adopted and affirmed the IJ's decision; it cited *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994). The BIA added that it would not consider Elias' equal protection and due process arguments because "we lack jurisdiction to rule on the constitutionality or validity of the Act and the regulations that we administer." It, therefore, dismissed Elias' appeal. This petition for review followed.

## JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We review legal questions de novo. *Kankamalage v. INS*, 335 F.3d 858, 861 (9th Cir. 2003). However, the BIA's interpretation of a governing statute is entitled to an appropriate level of deference. *See United States v. Mead Corp.*, 533 U.S. 218, 227–28, 121 S. Ct. 2164, 2171–72, 150 L. Ed. 2d 292 (2001); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–44, 104 S. Ct.

2778, 2781–82, 81 L. Ed. 2d 694 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 164, 89 L. Ed. 124 (1944); *Edu v. Holder*, 624 F.3d 1137, 1142–43 (9th Cir. 2010).

We review factual findings for substantial evidence. *Abebe v. Gonzales*, 432 F.3d 1037, 1039–40 (9th Cir. 2005) (en banc).

When the BIA adopts and affirms an IJ's decision and cites its *Burbano* decision, we will "'review the IJ's decision as if it were that of the BIA.'" *See Samayoa-Martinez v. Holder*, 558 F.3d 897, 899 (9th Cir. 2009).

## DISCUSSION

Elias argues that the CSPA does apply to those who ask for relief under NACARA, and, if it does not, his due process right to equal protection of the law has been violated. As we will show, neither leg of that argument supports his position.

## A. Application of the CSPA

The CSPA was designed to protect individuals who seek relief as derivative beneficiaries when their parents obtain relief. A common difficulty arose in cases where the child was under the age of twenty-one years when the child's parents applied for relief, but was over that age when the parents were granted that relief. That is, it was designed to prevent a determination that the child "had 'aged out' of eligibility." *De Osorio v. Mayorkas*, 695 F.3d 1003, 1006 (9th Cir. 2012) (en banc), *cert. granted*, 81 U.S.L.W. 3430 (U.S. June 24, 2013) (No. 12-930).

In determining whether that protection applies to NACARA applicants, we need only read the language of the CSPA itself. "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030, 157 L. Ed. 2d 1024 (2004). The same applies to administrative agencies' interpretation of statutes that they administer. *See Chevron*, 467 U.S. at 842–43, 104 S. Ct. at 2781. Here the CSPA by its plain language applies to a limited number of provisions in the Immigration and Nationality Act. It covers certain types of visas (family-based, employment-based, and diversity-based), and applications for refugee status and asylum. CSPA §§ 2–6 (codified at 8 U.S.C. §§ 1151(f), 1153(h), 1158(b)(3), 1157(c)(2)(B), 1154(k)).

The CSPA makes no reference to the wholly separate NACARA provisions, even though NACARA was enacted before the CSPA was enacted. We agree with the BIA and the IJ that there is no basis for declaring that NACARA applicants, nevertheless, come within the provisions of the CSPA. Certainly, Elias offers little or no support for his contrary assertion, but treats it as more of a feint, while his equal protection claim is his allonge.

## B. Equal Protection

Elias argues that if the CSPA does not apply to NACARA applicants, they are denied their right to the equal protection component of due process. The difficulty Elias faces in propounding that idea was explicated by the Supreme Court in a case where resident aliens questioned Congress' line-drawing regarding their access to certain welfare benefits.

*Matthews v. Diaz*, 426 U.S. 67, 69–70, 96 S. Ct. 1883, 1886, 48 L. Ed. 2d 478 (1976).  The Court said:

> Any rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution.  The reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization.

*Id.* at 81–82, 96 S. Ct. at 1892 (footnote references omitted). The Court added:

> In short, it is unquestionably reasonable for Congress to make an alien's eligibility depend on both the character and the duration of his residence.  Since neither requirement is wholly irrational, this case essentially involves nothing more than a claim that it would have been more reasonable for Congress to select somewhat different requirements of the same kind.

*Id.* at 82–83, 96 S. Ct. at 1893.

We have said much the same in somewhat different language.  We have pointed out that:

It is equally well established that the Due Process Clause incorporates the guarantees of equal protection.

However, [f]ederal authority in the areas of immigration and naturalization is plenary. Accordingly, federal classifications based on alienage are subject to relaxed scrutiny. Federal classifications distinguishing among groups of aliens thus are valid unless wholly irrational.

*Garberding v. INS*, 30 F.3d 1187, 1190 (9th Cir. 1994) (citations and internal quotation marks omitted). And, more specifically:

Distinctions between different classes of aliens in the immigration context are subject to rational basis review and must be upheld if they are rationally related to a legitimate government purpose. A legislative classification must be wholly irrational to violate equal protection. Challengers have the burden to negate every conceivable basis which might support a legislative classification whether or not the basis has a foundation in the record.

*Aguilera-Montero v. Mukasey*, 548 F.3d 1248, 1252 (9th Cir. 2008) (citations and internal quotation marks omitted). And, when addressing some of the distinctions made in NACARA itself, we have also underscored the deference we owe Congress. As we have noted: "[L]ine-drawing decisions made by Congress or the President in the context of

immigration and naturalization must be upheld if they are rationally related to a legitimate government purpose." *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 603 (9th Cir. 2002) (internal quotation marks omitted). Against that backdrop, we will consider Elias' argument that his equal protection rights were violated because as the child of a NACARA cancellation recipient, he is treated differently from a child of an asylum recipient.[6] We reject that argument.

In the first place, Elias' father, a NACARA cancellation recipient, was not in essentially the same group as those who received a grant of asylum, and there is no reason to treat Elias as if his father were in the same group. In fact, the groups are quite different. Regardless of conditions in the foreign country, a person seeking asylum must shoulder the not inconsiderable burden of proving that he, himself, has suffered or has a well-founded fear that he will suffer persecution in that country for certain specifically limited reasons. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B) (2001); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1, 112 S. Ct. 812, 815 & n.1, 117 L. Ed. 2d 38 (1992); *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003); *Fisher v. INS*, 79 F.3d 955, 960–61 (9th Cir. 1996) (en banc); *Ghaly v. INS*, 58 F.3d 1425, 1428–29 (9th Cir. 1995). A person seeking NACARA cancellation does not face any of those hurdles. Rather, as relevant here, an applicant for NACARA relief need only show that he came from one or more of at least

---

[6] Elias does not argue that Congress lacked a rational basis for classifying children of NACARA applicants differently from children seeking family-based, employment-based or diversity-based visas as beneficiaries of their parents when it enacted the CSPA.

seventeen countries,[7] and need not demonstrate that he was, or may be, persecuted in that country. That is not to say that the countries in question would be pleasant places to live,[8] but those who can demonstrate actual persecution are, no doubt, part of a much more limited group than those who need only demonstrate nationality. Incidentally, those who chose to seek NACARA relief could have instead chosen to pursue asylum relief and attempted to demonstrate their right to that form of protection.

Therefore, children of those who have obtained NACARA relief are in a category that is significantly distinct from children of those who have obtained asylum relief. That leaves Elias with the obligation of showing that Congress had no possible rational basis for treating those groups differently. That he has not done.

As the Fourth Circuit Court of Appeals declared regarding a relief program much like the one at hand,[9] where an equal protection claim was made because children of Haitian beneficiaries were treated differently from children of those who obtained relief under the CSPA:

> [The petitioner] has not demonstrated that
> Congress had no possible rational basis to

---

[7] *See* NACARA § 203(1) at "(5)(C)(i)(I), (II), (V)."

[8] For example, we have noted that NACARA was intended to benefit those who "had either 'taken unusual risks in escaping from oppressive governments' or 'whose countries had been profoundly ravaged by war.'" *Jimenez-Angeles*, 291 F.3d at 603.

[9] *See* Haitian Refugee Immigration Fairness Act, Pub. L. No. 105-277, 112 Stat. 2681 (1998) (HRIFA).

> deny CSPA protection to HRIFA applicants.
> Congress grants or denies many immigration
> benefits based on nationality, presumably to
> advance security, foreign relations,
> humanitarian, or diplomatic goals. We cannot
> say that Congress's decision to deny CSPA
> protection to HRIFA applicants lacks any
> rational basis.

*Midi v. Holder*, 566 F.3d 132, 137 (4th Cir. 2009). Elias is in
the same position.

Elias satisfies himself with the naked reflection that there
is no basis for the distinction, but some plausible bases come
readily to mind. Congress could well have seen much more
danger and need for the children of those who had actually
suffered persecution. Or, due to the lessened burdens of
persuasion in NACARA, it might not have thought that
NACARA delay was as serious and unfair as asylum delay;
that is, it might have felt that the waiting time for relief would
be shortened due to the applicant's ability to bypass the more
complicated asylum process. Or, Congress might even have
decided to limit the influx of aliens; relief could be available
to very substantial numbers of aliens from the designated
countries because it would be much easier for individuals to
obtain relief than it would have been if they were required to
demonstrate their entitlement under the more onerous asylum
provisions. Because Congress could have believed any or all
of these premises (and, no doubt, others) without being
"wholly irrational," it is not for us to declare that "it would
have been more reasonable for Congress to select somewhat
different requirements." *Matthews*, 426 U.S. at 83, 96 S. Ct.
at 1893.

## CONCLUSION

Elias has neither demonstrated that the CSPA applies to NACARA, nor demonstrated that the failure of Congress to apply the CSPA to NACARA violates the equal protection component of due process.  Thus, Elias is relegated to and bound by the multitude of other immigration provisions that Congress has adopted, faute de mieux.

Petition **DENIED**.