**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 18, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LUIS CARLOS RAMIREZ,

  Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

  Respondent.

No. 13-9610
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

Petitioner Luis Carlos Ramirez seeks review of a decision by the Board of

Immigration Appeals (BIA) upholding the denial of a motion to reopen his removal

proceedings. Considering the BIA's decision under an abuse-of-discretion standard,

*see Thongphilack v. Gonzales*, 506 F.3d 1207, 1209 (10th Cir. 2007), we deny his

petition for review for the reasons stated below.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Petitioner does not contest that he is removable. Instead, his petition for review relates to two forms of relief from removal he sought administratively: (1) cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA),[1] and (2) humanitarian asylum, both derivatively through his father. While petitioner's pursuit of these remedial avenues overlapped somewhat in time, they are substantively distinct and focus on different procedural events. We therefore set out a general background and separate timelines, followed by legal analysis of the dispositive issues raised, as to each form of relief. We then conclude by addressing certain broader objections raised in the petition for review.

## I. GENERAL BACKGROUND

Petitioner's father came to the United States from Guatemala in 1989, followed by his wife in 1991, and their children in 1995. He filed an asylum application in 1991, and added petitioner as a derivative applicant in June 2001. It is not clear what happened to this initial asylum application. In 2006, he pursued an updated application, again with petitioner as a derivative applicant. Petitioner and his father also applied for NACARA relief around the same time. After these applications were denied administratively, petitioner's father sought a hearing before an immigration judge (IJ) on his request for asylum (as well as withholding of

---

[1]     NACARA allows qualified aliens from certain countries, including Guatemala, to apply for "special rule" cancellation from removal, which affords relief under the more lenient standards that predated passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See De Leon v. Holder*, 761 F.3d 336, 338 (4th Cir. 2014); *Argueta v. Holder*, 617 F.3d 109, 111 (2d Cir. 2010).

removal and relief under the Convention Against Torture). The IJ denied relief in a decision upheld by the BIA on the grounds that petitioner's father had failed to demonstrate either past persecution or a reasonable fear of future persecution. A petition for review of that decision was dismissed by this court after the BIA granted a motion to reopen to allow petitioner's family to reapply for NACARA relief.

The United States Citizenship and Immigration Services (USCIS) granted NACARA relief to petitioner's father and, derivatively, to petitioner's mother and sister, but not to petitioner and his brother because they were over twenty-one and thus had aged-out of eligibility as child derivative applicants. Thereafter, petitioner's proceedings were recalendared and the IJ confirmed his ineligibility under NACARA. Petitioner did not appeal that decision to the BIA.

In July 2012, petitioner filed a motion to reopen with the IJ seeking relief as a derivative applicant on a humanitarian asylum application allegedly pending before the USCIS from his father. The IJ denied the motion for deficiencies relating to the alleged humanitarian asylum application, and also recounted the previous denial of NACARA relief. The BIA upheld the denial of the motion to reopen, and further held that petitioner had been properly found ineligible for NACARA relief. The petition on review here timely challenged the BIA's decision.

## II. NACARA RELIEF

Because petitioner complains about agency delay in handling his NACARA application, the timing of certain events will be more important than is usually the case. The relevant timeline is as follows:

10/25/2005  Date of initial NACARA application, administratively denied in 2006, after which petitioner pursues other relief before IJ.

8/05/2008  USCIS adopts new NACARA policy favorable to petitioner's father, whose 1991 asylum application now qualifies him as timely registered for NACARA relief. [2]

6-7/2010  Petitioner's family files (and later supplements) motion to reopen with BIA in order to resume pursuit of NACARA relief.

10/14/2010  BIA grants motion and remands to IJ to determine whether to enter administrative closure order enabling USCIS to consider NACARA relief.

12/15/2010  Petitioner turns 21 (aging out of eligibility for derivative relief on father's NACARA application).

1/21/2011  IJ enters administrative closure order.

1/9-10/2012  USCIS grants NACARA relief to petitioner's father and, derivatively, to his mother and sister, but not to petitioner, who has aged-out of eligibility.

6/18/2012  IJ denies petitioner NACARA relief based on his age.

8/14/2012  IJ denies petitioner's motion to reopen seeking to pursue derivative asylum, and in course of decision reiterates basis for previous denial of NACARA relief.

---

[2]  USCIS altered its policy to allow the filing of an asylum application to satisfy the separate registration requirement for NACARA relief. *See* Admin. R. at 181-85. Under this change, petitioner's father was ultimately found to have timely registered in 1991, even though he did not file a NACARA application until 2005.

11/17/2013    On appeal from denial of motion to reopen, BIA upholds denial of NACARA relief based on petitioner's age.

12/06/2013    Petition for review is filed with Tenth Circuit.

Under 8 U.S.C. § 1252(a)(2)(B) and (D), the denial of NACARA relief (cancellation of removal) is not subject to judicial review except for constitutional claims or questions of law arising from the denial.  *De Leon*, 761 F.3d at 339; *Argueta*, 617 F.3d at 111-12.  Petitioner asserts three constitutional claims in this regard:  (1) his right to procedural due process, particularly the right to be heard at a meaningful time, was violated by agency delay causing him to age-out of derivative eligibility on his father's NACARA application; (2) even if relief for agency delay is not available on a procedural due process theory, the same delay is remediable as a violation of substantive due process; and (3) his equal protection rights were violated when he was held ineligible for NACARA relief as a derivative child while, by operation of the Child Status Protection Act (CSPA), similarly aged-out applicants for other relief, such as asylum, would not be treated as ineligible.[3]  To these claims, petitioner adds a non-constitutional objection that the agency allegedly breached the settlement agreement in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796

---

[3]    CSPA grants specific types of applicants a protective age tied to the date of filing rather than the date an application is granted.  But CSPA "makes no reference to the wholly separate NACARA provisions, even though NACARA was enacted before the CSPA was enacted." *Tista v. Holder*, 722 F.3d 1122, 1126 (9th Cir. 2013) ("agree[ing] with the BIA . . . that there is no basis for declaring that NACARA applicants . . . come within the provisions of the CSPA").

(N.D. Cal. 1991), as enforced by *Chaly-Garcia v. United States*, 508 F.3d 1201, 1203-05 (9th Cir. 2007), by not handling the NACARA application in a more timely manner. This objection was not raised to or decided by the BIA, however, and we lack jurisdiction to consider it. *See Rivera-Jimenez v. INS*, 214 F.3d 1213, 1215 n.3 (10th Cir. 2000) (per curiam).

We do have jurisdiction over petitioner's constitutional claims. His equal protection challenge to the exclusion of NACARA applicants from the beneficial operation of CSPA falls squarely within the general rule that constitutional claims, particularly those challenging the constitutionality of the immigration laws, need not be exhausted, because the BIA lacks authority to review them. *See Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1094 (10th Cir. 2008). In contrast, his due process claims based on agency delay arguably implicate the exception from this general rule for "procedural errors or defects that the BIA could have remedied [and which are later] frame[d] . . . in terms of constitutional due process on judicial review." *Id.*; *see also Rivera-Jimenez*, 214 F.3d at 1215 n.3 (holding estoppel argument based on agency delay barred for failure to exhaust). But petitioner did complain to the BIA, albeit in fairly perfunctory fashion, that agency delay caused him to age out of eligibility for NACARA relief. We therefore reach these constitutional objections.

Petitioner's procedural due process claim seeks to estop the government from enforcing the NACARA scheme as set up by Congress. A party asserting estoppel against the government "must show that the government has engaged in 'affirmative

misconduct,'" and this showing must be "particularly strong" in the immigration context. *Rios v. Ziglar*, 398 F.3d 1201, 1208 (10th Cir. 2005) (following *Kowalczyk v. INS*, 245 F.3d 1143, 1149-50 (10th Cir. 2001)). "'Proof only that the Government failed to process promptly an application falls far short of establishing affirmative misconduct.'"[4] *Kowalczyk*, 245 F.3d at 1150 (brackets omitted) (quoting *INS v. Miranda*, 459 U.S. 14, 19 (1982) (per curiam)); *see also In re DePaolo*, 45 F.3d 373, 377 (10th Cir. 1995) ("Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct.") (internal quotation marks omitted). Petitioner has not made such a showing here. His 2005 NACARA application was administratively resolved in 2006 (he complains in passing about the merits of that resolution, but any objection in that regard is not before us because he did not pursue the matter before an IJ and the BIA). When the governing policy changed favorably in 2008, petitioner let twenty months go by before filing a motion to reopen with the BIA to pursue a renewed NACARA application. The BIA ruled on the motion four months later, remanding to the IJ, who entered an administrative closure order just two months after that to allow USCIS consideration of the

---

[4] Petitioner inaptly frames the issue as whether the delay was "reasonable," citing cases involving the Administrative Procedures Act. These authorities are inapposite here, where "our review is conducted under the INA [Immigration and Nationality Act] and not under the Administrative Procedure Act ("APA"). *Unlike the INA*, the APA includes a judicially enforceable duty to proceed within a reasonable time." *Kowalczyk*, 245 F.3d at 1150 n.5 (emphasis added).

- 7 -

NACARA application. But given petitioner's delay in initiating this process, he had already aged out before the matter even got to the USCIS.

The USCIS then took twelve months to resolve the application. Consistent with the authorities discussed above, administrative processing time does not demonstrate affirmative misconduct "[i]n the absence of a showing that the delay . . . [1] was deliberate or [2] resulted in identifiable prejudice to the petitioner's case." *Kowalczyk*, 245 F.3d at 1150. Neither has been shown here. Petitioner does not claim (nor could he on our record) that the government deliberately set out to sabotage his NACARA application while granting relief to his father, mother, and sister. He does make a prejudice argument, contending that the administrative delays caused him to age-out of derivative NACARA eligibility, but that is demonstrably not so. After the favorable policy change, he had twenty-eight months before he aged-out. The entire time spent by the BIA, IJ, and USCIS from the filing of the motion to reopen to the ruling on the NACARA application was just nineteen months. Given the decisive role played by petitioner's twenty-month delay in initiating the process for the renewed NACARA application, he can make no claim of actionable prejudice by the government here. We therefore reject the procedural due process challenge to the denial of NACARA relief.

To succeed on his substantive due process claim, petitioner must show government misconduct so egregious and outrageous as to shock the conscience of federal judges. *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013). From

what we have already said in regard to the affirmative-misconduct requirement of petitioner's procedural due process claim, it should be evident that his substantive due process claim based on the same conduct must fail. Indeed, this court has specifically acknowledged that government action causing delay cannot "'shock the conscience' without even rising to the level of affirmative misconduct." *United States v. Batie*, 433 F.3d 1287, 1293 (10th Cir. 2006).

As for equal protection, petitioner complains that CSPA improperly treats applicants for NACARA relief less favorably than applicants for certain other forms of relief, such as asylum, to whom it grants a protective age-status as of the date of filing. The same constitutional objection was rejected in *Tista v. Holder*, 722 F.3d 1122 (9th Cir. 2013), with which we agree on all material points. First, given the plenary authority Congress has over immigration matters, statutory classifications distinguishing between groups of aliens should not be disturbed by the courts unless they are wholly irrational. *Id.* at 1126-27; *see also Midi v. Holder*, 566 F.3d 132, 137 (4th Cir. 2009) (making same point in connection with similar constitutional challenge to CSPA by aged-out applicant for relief under Haitian Refugee Immigration Fairness Act); *Lockett v. INS*, 245 F.3d 1126, 1129 (10th Cir. 2001) (noting "[e]qual protection challenges in immigration matters warrant very deferential review").

Second, children (like petitioner) of aliens who seek NACARA relief are clearly distinguishable from children of aliens who seek asylum relief: "an applicant

for NACARA relief need only show that he came from one or more of at least seventeen countries, and need not demonstrate"—as an asylum applicant must—"that he was, or may be, persecuted in that country." *Tista*, 722 F.3d at 1127 (footnote omitted). This clear-cut distinction "leaves [petitioner] with the obligation of showing that Congress had no possible rational basis for treating those groups differently." *Id.*

Third, Congress differentially extends many immigration benefits properly "'to advance security, foreign relations, humanitarian, or diplomatic goals.'" *Id.* at 1128 (quoting *Midi*, 566 F.3d at 137). Here, a number of rational bases for the differential treatment of derivative asylum applicants and derivative NACARA applicants are evident, including the fact that "Congress could well have seen much more danger and need for the children of those [seeking asylum,] who had actually suffered [or reasonably feared future] persecution."[5] *Id.* (also suggesting Congress could have seen institutional delay as more of a problem needing correction in the comparatively complicated asylum process, or could simply have restricted the reach of CSPA to limit the influx of aliens through means other than asylum). "Congress could have believed any or all of these premises (and, no doubt, others) without being 'wholly irrational.'" *Id.* We therefore deny petitioner's equal protection challenge.

---

[5] Petitioner contends this rationale is inapposite here, because, he insists, his father did in fact suffer persecution in Guatemala. But the IJ and BIA found otherwise in an asylum determination not subject to review here.

### III.  HUMANITARIAN ASYLUM

Petitioner challenges the denial of his derivative humanitarian asylum claim in part on grounds of delay.  Once again, it is useful to set out a timeline of relevant events.  While there is some overlap with its NACARA counterpart, there are enough distinct events to warrant a separate asylum timeline, as follows:

2/15/1989   Petitioner's father enters the U.S.

10/15/1991  Petitioner's father initially applies for asylum.

12/20/1995  Petitioner enters the U.S.

6/14/2001   Petitioner is added to father's asylum application.

6/07/2006   Asylum application is updated and interview is taken; asylum is ultimately denied administratively.

7/01/2008   IJ denies asylum following hearing.

4/01/2010   BIA dismisses appeal from denial of asylum, upholding IJ's finding of no past, or fear of future, persecution.  Tenth Circuit dismisses petition for review of BIA's decision on 10/22/10.

10/14/2010  BIA grants motion to reopen and remands for IJ to consider whether to enter administrative closure order to permit USCIS to process NACARA application.

3/14/2012   Department of Homeland Security (DHS) moves to recalendar removal proceedings after petitioner fails to secure NACARA relief from USCIS.

6/08/2012   IJ holds that BIA's remand was solely for consideration of NACARA relief, which IJ denies on age grounds; petitioner does not appeal to the BIA.

7/09/2012    Petitioner files motion with IJ to reopen the proceedings for consideration of derivative humanitarian asylum through his father.

8/14/2012    IJ denies motion to reopen.

11/07/2013   BIA dismisses appeal, upholding denial of motion to reopen.

12/06/2013   Petition for review is filed with Tenth Circuit.

Petitioner raises several objections to the denial of his motion to reopen for his asylum claim. To begin with, he challenges it on the merits. The IJ denied the motion because (1) petitioner had not shown an asylum application was pending, and (2) petitioner had not presented evidence indicating a new eligibility for asylum to support reconsidering the prior denial. The BIA upheld the IJ's decision on the same grounds. Petitioner challenges both of these grounds (as he must to justify reversal on the merits).

First, he contends the operative asylum application was still pending, citing a document reflecting the grant of legal permanent resident status to his father (based on the NACARA application) on which his father indicated he did not want to withdraw his asylum request due to its continuing importance for petitioner. But that request had already been rejected administratively and then heard and denied by the IJ and BIA.[6] Second, petitioner insists he offered new evidence to show eligibility

---

[6]    While the BIA thereafter reopened and remanded the proceedings to allow petitioner's family to pursue NACARA relief, on remand the IJ ruled that the BIA's grant of reopening was limited solely to the NACARA application. Petitioner did not appeal that IJ decision.

for asylum. But he only attached to his motion some emails encouraging his attorney to pursue asylum sent by an asylum officer who evidently was not aware that an application had already been adjudicated or that the subsequent reopening of that proceeding had been limited to the pursuit of NACARA relief (as DHS counsel clarified in a follow-up message).[7] Admin. R. at 219-21. Petitioner did not support his motion to reopen with the necessary evidentiary showing. *See generally Maatougui v. Holder*, 738 F.3d 1230, 1239-40 (10th Cir. 2013) (discussing evidentiary showing required to warrant reopening).[8]

In sum, the denial of petitioner's motion to reopen is not subject to reversal on the merits. We therefore turn to his procedural objections.

Petitioner claims that agency delay, this time in resolving his father's asylum application, violated his due process rights.[9] As explained in connection with his objection to NACARA delay, to prevail on this procedural due process claim he must show identifiable prejudice resulting from affirmative misconduct. As for prejudice,

---

[7] Petitioner also refers us to evidence discussed in the opening brief in his prior appeal to this court (No. 10-9524), but that evidence the BIA had already found insufficient to support asylum the first time around.

[8] Petitioner complains that he had previously been prevented from offering (unspecified) new evidence relating to asylum at the hearing held by the IJ on remand from the BIA in 2010. But, as already noted, the IJ held that the remand was limited to NACARA relief, and petitioner never appealed that ruling. Moreover, petitioner could have proffered any new evidence he had to support asylum eligibility when he later moved the IJ to reopen on that basis.

[9] Petitioner objected to this delay, albeit in fairly perfunctory fashion, in his appeal to the BIA from the denial of his motion to reopen.

- 13 -

he relies on a comment made by the IJ when denying the application in 2008, that, had the matter been decided "back in 1993, '94, '95, before the peace accord [in Guatemala] was signed" petitioner's father would "probably" have "had a very good shot at getting asylum." Admin. R. at 29 (petitioner's appeal brief to BIA recounting IJ's comment). Where, as here, agency delay does not deprive the alien of his right to apply for relief, the mere fact that a prompt adjudication might have been more favorable is too speculative a basis upon which to build a case of prejudice. *See Roman v. INS*, 233 F.3d 1027, 1033 (7th Cir. 2000) (denying similar due process claim for lack of prejudice and contrasting it with claim based on delay that deprived alien of right to apply for asylum); *see also Hernandez v. Holder*, 579 F.3d 864, 873 (8th Cir. 2009) (denying claim for *nunc pro tunc* grant of asylum as speculative on similar basis), *relevant holding reaffirmed on reh'g*, 606 F.3d 900, 902 (8th Cir. 2010). But even if sufficient prejudice were shown, petitioner's due process claim would fail for lack of affirmative misconduct. The operative delay here is limited to the few years immediately following his father's initial asylum application in late 1991. And the record is silent as to efforts by petitioner's father to prompt action by the agency during that time. Indeed, it took petitioner's father until 2001—more than five years after petitioner came to the U.S.—just to add petitioner as a derivative beneficiary on the application. More importantly, as was the case with the NACARA application, there is no evidence of any deliberate effort by the agency to sabotage the asylum application through delay.

Petitioner's substantive due process claim fails here for the same reason it failed in connection with the NACARA application. Given the absence of any demonstrated affirmative misconduct, we cannot say the government's handling of the asylum application shocks the judicial conscience so as to support relief on a substantive due process theory.

While petitioner devotes much discussion to his equal protection claim regarding NACARA relief, his equal protection argument with respect to asylum essentially begins and ends with the unsupported assertion that "as a derivative asylum applicant from Guatemala [he] is not treated the same as other [unspecified] derivative asylum applicants by providing for a timely asylum hearing." Pet'r Opening Br. at 49. Such a bald and unsubstantiated allegation is "too conclusory to permit a proper legal analysis" and cannot support a plausible constitutional challenge. *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009); *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1323 (10th Cir. 2010) (holding "vague and conclusory allegations, without any specific facts" regarding differential treatment insufficient to support equal protection claim).

As he did in connection with NACARA relief, petitioner appears to argue here that the handling of his asylum application breached the settlement agreement in *American Baptist Churches*, as enforced by *Chaly-Garcia*. Once again, however, this argument was not made to or decided by the BIA and we therefore lack jurisdiction to consider it.

- 15 -

## IV.  ADDITIONAL OBJECTIONS

Petitioner concludes his opening brief by arguing that the denial of his motion to reopen was an abuse of discretion and then arguing that it was error at least not to extend to him certain favorable forms of prosecutorial discretion.  The first argument is just a summary recapitulation of his various objections, which we have already found to lack merit.

The second argument faults DHS for failing to exercise its prosecutorial discretion to forgo enforcement proceedings against him, and faults the IJ and BIA for failing to review this non-action.  Nothing about this complaint is cogent:  the IJ and BIA do not have authority over matters of prosecutorial discretion and, in any event, this court lacks jurisdiction to review such matters under 8 U.S.C. § 1252(g).[10] *Young Dong Kim v. Holder*, 737 F.3d 1181, 1185 (7th Cir. 2013); *see also Aguilar-Alvarez v. Holder*, 528 F. App'x 862, 870-71 (10th Cir. 2013) (following numerous authorities recognizing jurisdictional bar in § 1252(g) on judicial review of

---

[10]     Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law . . ., no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General [or, now, DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The Supreme Court has made it clear that this provision "was directed against a particular evil:  attempts to impose judicial constraints upon prosecutorial discretion" in immigration matters. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999).

prosecutorial discretion in immigration cases).  We note that petitioner's conclusory references to due process and equal protection, tacitly invoking the special provision for judicial review of constitutional issues in § 1252(a)(2)(D), have no jurisdictional import here.  Section 1252(a)(2)(D) exempts constitutional claims or issues of law only from the jurisdiction-stripping provisions "in subparagraph (B) or (C), or in any other provision of this chapter (*other than this section*)," *id.* (emphasis added), so "the remaining limits on judicial review in 'this section'—i.e., § 1252—still apply," *Hamilton v. Gonzales*, 485 F.3d 564, 567 (10th Cir. 2007) (holding § 1252(a)(2)(D) inapplicable to provision in § 1252(a)(1) limiting judicial review to final orders of removal).  Thus, "[b]y its plain language, § 1252(a)(2)(D)'s authorization to review certain constitutional claims or questions of law does not apply to § 1252(g)." *Hussain v. Keisler*, 505 F.3d 779, 784 (7th Cir. 2007).

The petition for review is denied.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge