**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MANUEL VELOZ-LUVEVANO,

     Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

     Respondent.

No. 15-9522
(Petition for Review)

_____

**ORDER**
_____

Before **GORSUCH**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.
_____

This matter is before the court on the *Respondent's Unopposed Motion for Publication of the Court's July 24, 2015 Order and Judgment*. Upon consideration, the motion is granted. The Clerk is directed to replace the decision issued originally on July 24, 2015 with the published version attached to this order. The effective filing date shall remain July 24, and the reissuance is *nunc pro tunc* to that date.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MANUEL VELOZ-LUVEVANO,

        Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

        Respondent.

No. 15-9522

**PETITION FOR REVIEW OF DECISION OF THE**
**BOARD OF IMMIGRATION APPEALS**

Submitted on the briefs:[*]

Patrick C. Hyde, Law Office of Patrick C. Hyde, P.C., Denver, Colorado, for Petitioner.

Mary Jane Candaux, Assistant Director, Jeremy Michael Bylund, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

Before **GORSUCH**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

**O'BRIEN**, Circuit Judge.

In February 2010, after being on the lam for almost a decade after his initial arrest, Manuel Veloz-Luvevano, a native and citizen of Mexico, pled guilty to criminal impersonation in violation of Colorado law: Col. Rev. Stat. § 18-5-113(1)(d), a class 6 felony and a crime involving moral turpitude (CIMT). He now rues his decision and seeks to be excused from the resulting consequences by offering a number of conveniently contrived arguments. Stripped of procedural and rhetorical gloss his arguments come down to this: even though the crime to which he pled guilty is, categorically, a CIMT his acts did not amount to a CIMT. Stated a bit differently, regardless of the tenor of his arguments what he actually says is that immigration officials should look past his conviction and recognize that he pled guilty to a crime he did not commit, thereby excepting him from a statutory bar to cancellation of removal. The Board of Immigration Appeals (BIA) didn't buy it and neither do we.

## I. Background

Veloz-Luvevano entered the United States on February 14, 1998, with a B-2 (visitor) visa, which allowed him to remain in this country for six months. But he did not leave.[1] In July 2000, he was arrested by Colorado authorities for possessing a forged social security card, which he purchased to enable him to work in the United States. He

---

[1] He did make a brief trip to Mexico to visit family.

was released on bond, but failed to appear for court proceedings.  On September 25, 2009, he was found and re-arrested on those criminal charges and three days later the federal government initiated removal proceedings against him under 8 U.S.C. § 1182(a)(6)(A)(i).  In February 2010, while removal proceedings were pending, he pled guilty to the § 18-5-113(1)(d) violation and was sentenced.

In December 2010, he conceded removability but applied for cancellation of removal under 8 U.S.C. § 1229b(b), claiming removal would cause hardship to his citizen wife and children.  He was represented by counsel.  The government moved to pretermit his application because his Colorado conviction for criminal impersonation is a CIMT, making him ineligible for cancellation of removal.  *See* 8 U.S.C. §§ 1182(a)(2)(A) ("any alien convicted of . . . a crime involving moral turpitude . . . is inadmissible"), 1229b(b)(1)(C) (the Attorney General may cancel the removal of any deportable alien if, among other things, he has not been convicted of a CIMT).  As an alternative to pretermitting his application, the government offered him the opportunity to accept a pre-conclusion voluntary departure[2] if he agreed to waive his right to appeal.  *See* 8 U.S.C. § 1229c(a); 8 C.F.R. § 1240.26(b)(1)(i)(D).  He accepted the government's offer and he was given until July 30, 2012, to depart from the United States.

---

[2] "Pre-conclusion voluntary departure" appears to be a term of art in immigration cases.  It simply means the petitioner agrees to a voluntary departure prior to the completion of removal proceedings.  *See* 8 U.S.C. § 1229c(a); 8 C.F.R. § 1240.26(b)(1)(i)(D).

In May 2012, through newly retained counsel he sought relief from the BIA, claiming the Immigration Judge (IJ) erred in pretermitting the application for cancellation of removal. Not surprisingly, on July 27, 2012, the BIA summarily dismissed the appeal. The IJ had not pretermitted the application; Veloz-Luvevano accepted voluntary departure and agreed not to appeal.

As before, Veloz-Luvevano did not leave the United States; this time in spite of his explicit promise to do. Instead, on November 23, 2012, he filed a motion to reopen the removal proceedings. *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.23(b)(1). According to him, his previous counsel was ineffective by failing to provide relevant documents which would have shown HIS criminal acts did not amount to a CIMT. He also claimed his waiver of his right to appeal (a condition of his voluntary departure) was neither knowing nor voluntary.

The IJ denied the motion to reopen as untimely. *See* 8 U.S.C. § 1229a(c)(7)(C)(i) (motions to reopen generally must be filed within 90 days of the date of entry of a final order of removal); *see also* 8 C.F.R. § 1003.23(b)(1) (same). However, the IJ also reviewed the documents from the criminal conviction (which were attached to the motion to reopen) and, as an alternative holding, concluded they demonstrated his Colorado conviction did, in fact, amount to a CIMT. Veloz-Luvevano was, accordingly, not eligible for cancellation of removal and he suffered no prejudice from any failure to submit documents. As to his claim of not knowingly and voluntarily waiving his right to appeal in the immigration proceedings, the IJ said the record showed otherwise—it "reflects that [he] was provided a Spanish interpreter during [the] proceedings and that he

- 4 -

made an informed decision to accept voluntary departure after having been made aware of the consequences of accepting that relief." (R. at 79 n.2.)

Veloz-Luvevano again appealed to the BIA, this time for relief from the denial of his motion to reopen. Like the IJ, the BIA decided his criminal impersonation conviction was a CIMT. But, unlike the IJ, it did not look to the underlying documents. Rather, it concluded criminal impersonation under Colo. Rev. Stat. § 18-5-113(1)(d) is a categorical CIMT. Its reasoning: 1) criminal impersonation under § 18-5-113(1)(d) implicitly involves fraud and fraud has always been found to involve moral turpitude, 2) because his crime was categorically a CIMT the immigration statutes barred cancellation of removal, and 3) he could not, therefore, show prejudice from counsel's failure to submit irrelevant documents. In the same vein, it determined he could not show prejudice from his waiver of his right to appeal (assuming, *arguendo*, the waiver was not knowing and voluntary) because he received the only relief to which he was entitled – voluntary departure.

## II. Discussion

We review a BIA order denying a motion to reopen for abuse of discretion. *See Wei v. Mukasey*, 545 F.3d 1248, 1254 (10th Cir. 2008). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013) (quotations omitted). "Whether a conviction constitutes a [CIMT] is a question of law that we review de novo." *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011).

- 5 -

Here Veloz-Luvevano repeats the argument made to the BIA: had his first attorney presented additional documents they would have shown him to be eligible for cancellation of removal and he would not have agreed to a voluntary departure.

"[A]lthough there is no right to appointed counsel in deportation proceedings, a petitioner . . . can state a Fifth Amendment violation if he proves that retained counsel was ineffective and, as a result, the petitioner was denied a fundamentally fair proceeding." *Osei v. INS*, 305 F.3d 1205, 1209 (10th Cir. 2002). But, in order to prevail on an ineffective assistance of counsel claim, the petitioner must show he was prejudiced by his attorney's performance. *Matter of Lozada*, 19 I. & N. Dec. 637, 638 (BIA 1988); *see also Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008). Veloz-Luvevano cannot make the required showing. He is not eligible for cancellation of removal, regardless of what the documents may reveal.

To be eligible for cancellation of removal, a petitioner must show, among other things, that he has not been convicted of a CIMT.[3] 8 U.S.C. § 1229b(b)(1)(C); *see also*

---

[3] Section 1229b(b)(1) provides:

The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien--

  (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

  (B) has been a person of good moral character during such period;

  (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(Continued . . .)

*Garcia v. Holder*, 584 F.3d 1288, 1289 (10th Cir. 2009) ("An alien convicted of a CIMT is considered inadmissible and is therefore not eligible for cancellation of removal . . . ."). The statute does not define CIMT. However, we have said "[m]oral turpitude refers to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Wittgenstein v. INS*, 124 F.3d 1244, 1246 (10th Cir. 1997) (quotations omitted). "[C]rimes in which fraud [is] an ingredient [are] regarded as involving moral turpitude." *Id.* (quotations omitted).

"To determine whether a state conviction is a [CIMT], we ordinarily employ the categorical approach." *Rodriguez–Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011). Under that approach, we consider only "the statutory definition of the crime, not the underlying factual circumstances of the crime." *Id.*; *see also Moncrieffe v. Holder*, --- U.S. ---, 133 S. Ct. 1678, 1684 (2013). "If every conviction under a given state statute [involves moral turpitude], then the state conviction is categorically a [CIMT]." *Ibarra v. Holder*, 736 F.3d 903, 907 (10th Cir. 2013).

At the time of Veloz-Luvevano's 2010 conviction,[4] Colo. Rev. Stat. § 18-5-113(1)(d) read in pertinent part:

> (1) A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity, and in such identity or capacity he:

> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

[4] The statute was amended in 2011.

. . . .

> (d) Does an act which if done by the person falsely impersonated, might subject such person to an action or special proceeding, civil or criminal, or to liability, charge, forfeiture, or penalty.

It constitutes a categorical CIMT because fraud is inherent in the statute.[5]  "[F]raud is generally defined as a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment."  *See Wolford v. Pinnacol*

---

[5] We reached a similar conclusion in *Morones-Quinones v. Holder*, 591 F. App'x 660 (10th Cir. 2014) (unpublished), and *Beltran-Rubio v. Holder*, 565 F. App'x 704 (10th Cir. 2014) (unpublished).  In those cases, panels of this Court also considered the pre-2011 version of the statute.  They decided criminal impersonation under subsection (1)(e) of Colo. Rev. Stat. § 18-5-113 is categorically a CIMT.  That subsection stated: "A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity and in such identity or capacity he . . . . [d]oes any other act with intent to unlawfully gain a benefit for himself or another or to injure or defraud another."  In both cases, the petitioners argued the statute was not a categorical CIMT because it reached conduct not involving moral turpitude, in particular, it could be violated merely by the commission of an act using a false identity or capacity with the intent to benefit (not necessarily to injure another).  We rejected that interpretation of the statute.  In *Beltran-Rubio*, we said such argument ignores the statute's introductory clause—knowingly assuming a fake identity—which requires deceit.  575 F. App'x at 707.  "And when that deceit is used with any of the intended goals . . .—whether to benefit, injure, or defraud—there is fraud."  *Id.*  In *Morones-Quinones*, we reasoned the statute inherently involves fraud even though it can be violated merely by "intent to unlawfully gain a benefit."  591 F. App'x at 663-64.  That is because the benefit the defendant seeks to gain by assuming a false identity must be unlawful.  *Id.* at 663.  "Therefore, under the plain meaning of § 18–5–113(1)(e), the perpetrator not only must lie about her identity or capacity, but she must do so with the intent to gain a benefit from someone else that she cannot legally obtain.  She therefore necessarily intends by her deceit to induce another person to act to his detriment by providing her the unlawful benefit."  *Id.* at 664.  While these cases address a different subsection of the statute and are unpublished, their reasoning is nevertheless instructive in this case.  10th Cir. R. App. P. 32.1(A).  A mere intent to benefit from impersonation is fraud.  Here the impersonation (subsection (1)(d)) is criminal only if it might injure another.

*Assurance*, 107 P.3d 947, 952 n.6 (Colo. 2005) (quotations omitted); *see also* Black's

Law Dictionary 775 (10th ed. 2014). Indeed, the Colorado Court of Appeals has

described the criminal impersonation statute as criminalizing "fraudulent impersonation."

*See People v. Van De Weghe*, 312 P.3d 231, 235 (Colo. App. 2012). And the statute

itself falls in Colorado's criminal code under "Offenses Involving Fraud."

In spite of clear statutory language, Veloz-Luvevano argues criminal

impersonation under Colo. Rev. Stat. § 18-5-113(1)(d) is not a CIMT because IN HIS

CASE it reaches conduct that does not involve moral turpitude. Case-specific inquiry

(from the documents his counsel failed to produce), he says, would reveal that he had no

intent to commit fraud or to harm anyone and indeed no one was harmed because the

social security number on the forged card found in his possession did not belong to

anyone.[6] It is a clever, but hardly compelling, argument.

The statute "applies when one uses a false capacity to subject another to civil or

criminal liability." *See Montes-Rodriguez v. People*, 241 P.3d 924, 929 (Colo. 2010). A

plea of guilty to violating the statute admits each of the elements. *See McCarthy v.*

*United States*, 394 U.S. 459, 466 (1969) ("[A] guilty plea is an admission of all the

elements of a formal criminal charge . . . ."); *see also People v. Madrid*, 908 P.2d 1167,

---

[6] The government disputes this saying a LEXIS record search revealed the social security number did belong to another person. Not only is this information not before us because it was not provided to either the IJ or BIA, *see* 8 U.S.C. § 1252(b)(4)(A), it is immaterial under the categorical approach. But, as the government correctly notes, "[i]t is one thing [for Veloz-Luvevano] to state that the record does not contain evidence of the identity of the victim, it is quite another [for him] to affirmatively represent that the number did not belong to anyone." (Respondent's Br. at 22 n.3.)

1169 (Colo. App. 1995) ("A plea of guilty is a judicial admission of the offense and its elements . . . ."). One of the elements requires that enumerated consequences might have resulted to the impersonated individual had he (or she) committed the acts the impersonator took in his (or her) name. The statute cannot reasonably be read to have been violated when the interests of the impersonated individual were not put at risk by an impersonator's acts. "If every conviction under a given state statute [involves moral turpitude], then the state conviction is categorically a [CIMT]." *Ibarra*, 736 F.3d at 907. Veloz-Luvevano's claim that his acts caused no harm to the impersonated individual merely seeks to impeach his conviction by belatedly denying one of the very elements to which he admitted by pleading guilty. That has no place in these proceedings.

Veloz-Luvevano "cannot collaterally attack the legitimacy of [his] state criminal conviction in [an immigration] proceeding"; he must instead bring such an attack in state court. *Waugh v. Holder*, 642 F.3d 1279, 1282 (10th Cir. 2011) (quotations omitted); *see also Abiodun v. Gonzales*, 461 F.3d 1210, 1217 (10th Cir. 2006); *Trench v. INS*, 783 F.2d 181, 184 (10th Cir. 1986). He claims to have done so by filing a petition for post-conviction relief with the state court but he has not submitted an order from the state court invalidating his conviction. As the record stands we must accept the conviction's validity including the necessary presumption that his conduct satisfied each element of the offense to which he pled guilty.[7]

---

[7] Veloz-Luvevano also argues his prior counsel (who represented him in both the removal proceedings and state court criminal proceedings) was constitutionally

(Continued . . .)

Because criminal impersonation under Colo. Rev. Stat. Ann. § 18-5-113(1)(d) is categorically a CIMT, Veloz-Luvevano is not eligible for cancellation of removal. His first counsel was not ineffective for failing to produce irrelevant documents and, *a fortiori*, Veloz-Luvevano suffered no prejudice from counsel's failure to do so.

The remaining arguments can be resolved in short order. First, he claims his waiver of his right to appeal in the immigration proceedings was not knowing and voluntary. This claim is contrary to the record, as indicated by the IJ who presided over the proceedings. More important, even assuming his waiver was not knowing or voluntary, he cannot show prejudice—he received the only relief to which he was entitled (voluntary departure).

Second, he faults the government for refusing to exercise its prosecutorial discretion to forego removal proceedings against him and faults the IJ for not reviewing this refusal. But neither an IJ nor the BIA has the authority to review the government's prosecutorial discretion decisions. And we too lack jurisdiction over them under 8 U.S.C. § 1252g. *See Montiel-Hernandez v. Holder*, 601 F. App'x 745, 746-47 & n.2 (10th Cir. 2015) (unpublished); *Ramirez v. Holder*, 590 F. App'x 780, 788-89 (10th Cir. 2014) (unpublished).[8] Indeed, "§ 1252g was directed against . . . attempts to impose

---

ineffective for (1) improperly advising him to plead guilty even though the evidence did not support a conviction and (2) erroneously telling him his guilty plea would have no immigration consequences, *see Padilla v. Kentucky*, 559 U.S. 356 (2010). These arguments also impermissibly attack the validity of his state court conviction.

[8] As in *Ramirez*, Veloz-Luvevano couches his prosecutorial discretion argument in terms of a violation of his equal protection and due process rights. Like in *Ramirez*, we

(Continued . . .)

- 11 -

judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999).

Finally, he claims his motion to reopen was not untimely, contrary to the ruling of the IJ because he had to follow the procedural requirements of *Lozada*[9] before he could file his motion to reopen alleging ineffective assistance of counsel. 19 I. & N. Dec. at 639. Because he did not and cannot prevail on the merits of his motion to reopen, the timeliness argument is irrelevant.

The BIA did not err. Veloz-Luvevano's petition for review is **DENIED**.

---

hold that to the extent he has raised constitutional claims in order to invoke "the special provision for judicial review of constitutional issues in § 1252(a)(2)(D)," it is unavailing. 590 F. App'x at 789. "[B]y its plain language, § 1252(a)(2)(D)'s authorization to review certain constitutional claims or questions of law does not apply to § 1252(g)." *Id.* (quotations omitted).

[9] *Lozada* requires a petitioner seeking to raise an ineffective assistance of counsel claim in immigration proceedings to (1) file an affidavit attesting to the relevant facts, (2) inform former counsel of the allegations and allow him an opportunity to respond, and (3) if there is an ethical violation, file a complaint with the appropriate disciplinary authorities or explain why one was not filed. 19 I. & N. Dec. at 639.