FILED
United States Court of Appeals
Tenth Circuit

February 13, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GERARDO LUIS NINAMANGO-RAMOS,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 14-9545
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **McHUGH**, Circuit Judges.

An immigration judge (IJ) ordered petitioner Gerardo Luis Ninamango-Ramos

removed to Peru and denied his application for cancellation of removal. He appealed

to the Board of Immigration Appeals (Board or BIA), which dismissed his appeal.

He now petitions us for review of the BIA's decision. We deny the petition.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Ninamango is a citizen and native of Peru. He entered the United States without inspection in 1992 and has resided in this country ever since.

In October 2003 his wife at the time obtained a protective order against him in state court under Utah's Cohabitant Abuse Act. Later that month she reported to police that when she was at home Mr. Ninamango opened her front door, came in the house, and walked around inside her home in violation of the protective order.

Based on this incident, on July 21, 2004, Mr. Ninamango entered a plea in abeyance to one count of violation of a protective order, a class A misdemeanor. *See* Utah Code Ann. § 76-5-108 (2003). Section 76-5-108 provided:

> (1) Any person who is the respondent or defendant subject to . . . [an] ex parte protective order . . . issued under Title 30, Chapter 6, Cohabitant Abuse Act . . . who intentionally or knowingly violates that order after having been properly served, is guilty of a class A misdemeanor, except as a greater penalty may be provided in Title 77, Chapter 36, Cohabitant Abuse Procedures Act.
>
> (2) Violation of an order as described in Subsection (1) is a domestic violence offense under Section 77-36-1 and subject to increased penalties in accordance with Section 77-36-1.1.

Not all violations of protective orders entered under the Cohabitant Abuse Act are considered criminal offenses. It is a criminal offense to violate provisions that:

> (a) enjoin the respondent from threatening to commit or committing domestic violence or abuse against the petitioner and any designated family or household member;
>
> (b) prohibit the respondent from harassing, telephoning, contacting, or otherwise communicating with the petitioner, directly or indirectly;

- 2 -

(c) order that the respondent is excluded from the petitioner's residence and its premises, and order the respondent to stay away from the residence, school, or place of employment of the petitioner, and the premises of any of these, or any specified place frequented by the petitioner and any designated family or household member;

(d) upon finding that the respondent's use or possession of a weapon may pose a serious threat of harm to the petitioner, prohibit the respondent from purchasing, using, or possessing a firearm or other weapon specified by the court; [or]

(e) order possession and use of an automobile and other essential personal effects, and direct the appropriate law enforcement officer to accompany the petitioner to the residence of the parties to ensure that the petitioner is safely restored to possession of the residence, automobile, and other essential personal effects, or to supervise the petitioner's or respondent's removal of personal belongings.

Utah Code. Ann. §§ 30-6-4.2(2), (5)(a)(i) (2003).[1] Violation of any of the remaining provisions included in a protective order is considered a civil offense. *See id.* § 30-6-4.2(5)(a)(ii).

In January 2006, Mr. Ninamango failed to comply with the terms of his plea in abeyance, and a warrant was issued for his arrest. He was arrested but released after completing a domestic-violence class. The case against him was later dismissed, and in March 2007 it was expunged.[2]

---

[1] The current, modified version of this statute is Utah Code Ann. § 78B-7-106(2). We cite to the version in effect at the time of Mr. Ninamango's conviction and cited in the BIA's decision.

[2] The government's counsel initially raised the possibility that "because the conviction had been expunged and there existed very limited record of conviction, said conviction was not a bar to [Mr. Ninamango's] eligibility for cancellation [of removal]." R. at 153-54. But the IJ did not adopt this position in his decision, and

(continued)

In the meantime, however, Mr. Ninamango's arrest had come to the attention of the Immigration and Naturalization Service (INS). In January 2006 the INS issued him a Notice to Appear, charging that he was subject to removal because he was present in the United States without having been admitted or paroled. He conceded the allegations and the charge against him, but applied for discretionary cancellation of removal under 8 U.S.C. § 1229b(b)(1). That section provides for discretionary relief from removal when the applicant:

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;
>
> *(C) has not been convicted of an offense under section 1182(a)(2); 1227(a)(2), or 1227(a)(3) of this title . . . ; and*
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or . . . lawfully admitted for permanent residence.

(emphasis added).

The disqualifying offenses identified in § 1229b(b)(1)(C) include protective-order violations described in 8 U.S.C. § 1227(a)(2)(E)(ii). Section 1227(a)(2)(E)(ii) provides:

> Any alien who at any time after admission is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that

neither the government nor Mr. Ninamango attempt to defend it in this petition for review.

- 4 -

involves protection *against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued* is deportable.

(emphasis added).

In his application for cancellation of removal, Mr. Ninamango asserted that his removal would cause exceptional and extremely unusual hardship to Julio Ninamango, his United States citizen son. The IJ held a hearing on the application at which Mr. Ninamango, his son Julio, his daughter Karina, and Dr. Juan Mejia, a clinical psychologist, testified. Testimony was presented concerning Julio's educational needs and the hardships he would suffer if he accompanied his father to Peru.

Testimony was also presented at the hearing concerning Mr. Ninamango's history of domestic violence and his conviction for violation of the protective order. Mr. Ninamango explained that the October 2003 protective order violation occurred when he took his children to his ex-wife's house to visit her. He entered the home because "[i]t surprised me that she was with another man so I got mad." R. at 392. He stated that during the incident he asked her who the man was but did not harm or threaten him.

After the hearing the IJ denied cancellation of removal. He concluded that Mr. Ninamango's Utah conviction for violating a protective order was disqualifying because Mr. Ninamango "engaged in conduct that violates the portion of the protection order that involved protection against credible threats of violence, repeated

harassment, or bodily injury to the person or persons for whom the protection order was issued." R. at 119. He noted that it was Mr. Ninamango's burden to establish that he had not committed a disqualifying offense, and found that he had failed to meet that burden. Alternatively, the IJ found that Mr. Ninamango had failed to establish that his son Julio would suffer exceptional and extremely unusual hardship if he were removed to Peru.

Mr. Ninamango appealed to the BIA. He argued that Utah Code Ann. § 76-5-108 is a "divisible" statute, because the violation of some of its provisions categorically disqualifies an alien from cancellation-of-removal relief, while the violation of other provisions does not. This divisibility, he urged, required "review of documents of the record of conviction to establish that [Mr. Ninamango] has been found guilty of all [the] elements of a removable offense," R. at 164, but such a review was impossible, because "[t]he record of conviction was almost entirely destroyed following the expungement of [Mr. Ninamango's] conviction," *id.* at 166. In light of this missing record of conviction, the evidence was insufficient to establish that he committed an offense that made him ineligible to apply for cancellation of removal. In addition, his own "testimony and review of police reports of the incident show[ed] no violation of the portion of the order intended to protect against credible threats of violence, repeated harassment or bodily injury." *Id.* at 167.

The BIA rejected these arguments.  It began by noting that Mr. Ninamango bore the burden of establishing that he did not have a disqualifying conviction under 8 U.S.C. § 1229b(b)(1)(C).  The BIA reasoned that the fact of his criminal conviction under the Utah statute necessarily meant that he had been convicted of disqualifying conduct, because all such convictions involve disqualifying conduct.  Alternatively, Mr. Ninamango had failed to meet his burden of showing that his offense fell within a provision of the statute that did not describe disqualifying conduct.

One member of the BIA panel dissented.  She concluded that Mr. Ninamango had met his burden of proof, because there was "nothing in the court records showing a particularized determination was made by the court that [Mr. Ninamango] had violated any particular section of the protective order," R. at 12, and not all such sections described a disqualifying offense.[3]

## ANALYSIS

Although we lack jurisdiction to review a discretionary denial of cancellation of removal, *see* 8 U.S.C. § 1252(a)(2)(B)(i), we have jurisdiction to review the Board's legal conclusion that Mr. Ninamango's inconclusive record of conviction was insufficient to establish his eligibility for cancellation, *see Garcia v. Holder*, 584 F.3d 1288, 1289 n.2 (10th Cir. 2009).  We review the BIA's legal determinations

---

[3]     Mr. Ninamango filed a motion with the BIA to remand the case to the IJ for further consideration in light of his marriage to his longtime girlfriend, a United States citizen.  The BIA denied the motion to remand.  Mr. Ninamango does not challenge this denial in the petition for review.

- 7 -

de novo, *see id.* at 1289, and its findings of fact for substantial evidence, *see Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009).

To determine whether Mr. Ninamango's prior conviction disqualifies him under § 1227(a)(2)(E)(ii), we apply the "categorical approach." *Cf. Ibarra v. Holder*, 736 F.3d 903, 907 (10th Cir. 2013) (applying categorical approach). Under that approach we examine only the elements of the statute under which the alien was convicted to determine whether they match the disqualifying criteria in the immigration statute. *See United States v. Trent*, 767 F.3d 1046, 1051-52 (10th Cir.) ("[T]he categorical approach . . . looks only at the elements of the statute under which the defendant was convicted." (internal quotation marks omitted)), *petition for cert. filed* (Dec. 23, 2014) (No. 14-7762); *Ibarra*, 736 F.3d at 907 ("The categorical approach . . . requires ignoring a petitioner's actual conduct and examining only the minimum conduct needed for a conviction under the relevant state law."). "If every conviction under a given state statute requires all the elements of the generic federal crime, then the state conviction is categorically a [disqualifying] offense." *Ibarra*, 736 F.3d at 907.

The minimum elements of any conviction under § 76-5-108 are as follows: (1) the defendant was subject to a protective order issued under one of the identified

protective-order statutes;[4] (2) the defendant was properly served with the protective order; and (3) the defendant intentionally or knowingly violated the order. *See State v. Peterson*, No. 20070169-CA, 2008 UT App 137, 2008 WL 1748300, at \*1 (Utah App. Apr. 17, 2008) (unpublished). Mr. Ninamango contends that he is not disqualified under a pure categorical approach because § 76-5-108 "includes violations of court orders not covered by section 237(a)(2)(E)(ii)." Aplt. Br. at 29. Echoing the BIA dissent, he asserts that one could be guilty of an offense under § 76-5-108 for violation of a protective-order provision specified by § 30-6-4.2(2)(e), "merely by refusing to return personal property such as a television or clothing," Aplt. Br. at 29 (internal quotation marks omitted). Thus, he argues, a conviction under § 76-5-108 does not categorically meet the criteria for a disqualifying offense.

But even if we were to accept Mr. Ninamango's contention that § 76-5-108 fails a purely categorical test, further analysis would be necessary. It is not clear that Mr. Ninamango was convicted of a nondisqualifying violation. "If some conduct that would be criminal under the state statute fits within the definition of the federal predicate crime but some does not, a conviction under that state statute merits the modified categorical approach to determine whether the petitioner's actual conduct involved all the elements of the generic crime." *Ibarra*, 736 F.3d at 907 (brackets

---

[4]     *See State v. Hart*, 274 P.3d 1010, 1012 (Utah. App. 2012) (assuming, without deciding, that the state must prove as an element that the protective order was issued under one of the statutes identified in § 76-5-108).

and internal quotation marks omitted).  Using the modified categorical approach, courts may resolve the ambiguity concerning the nature of the petitioner's conviction "by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy."  *Id.* (internal quotation marks omitted).  The aim is not to arrive at a circumstance-specific determination of the facts underlying the conviction, but rather to determine under which section of a statute the defendant was convicted.

Recently, the Supreme Court provided guidance concerning when courts may apply the modified categorical approach.  In *Descamps v. United States*, 133 S. Ct. 2276 (2013), the Court explained that the modified categorical approach applies only when the statute is "divisible"; that is, when it "lists multiple, alternative elements, and so effectively creates several different crimes."  *Id.* at 2285 (ellipses and internal quotation marks omitted).  It does not apply when the statute merely "has an overbroad or missing element."  *Id.* at 2292.

In determining whether a statute is "divisible," the alternative statutory phrases that create divisibility need not appear within the statute itself.  *Trent*, 767 F.3d at 1055-57.  A statute that is not "divisible on its face," *id.* at 1056, may be treated as divisible if it references another statute or set of statutes that "lays out multiple, alternative versions of the crime," *id.* at 1057 (internal quotation marks omitted), some of which are disqualifying under the pertinent immigration statute, while others are not.

That was essentially the approach taken by Mr. Ninamango's argument before the BIA: that 76-5-108 references the Cohabitant Abuse Act, which is itself a divisible statute to which the modified categorical approach may be applied. *See* R. at 163-64 ("The statute for protective order under which [he] was convicted includes violations of court orders not covered by section 237(a)(2)(E)(ii) of the Act, and which are not removable offenses under the Act. Therefore, [his] conviction, under a divisible statute is not categorically a conviction for an offense that would render him removable or ineligible for relief, thus calling for review of documents of the record of conviction. . . ."). As noted, Mr. Ninamango further argued that review of these documents concerning his conviction was impossible because they had been destroyed, and thus it could not be proved, using the modified categorical approach, that his conviction fell within a disqualifying section of the divisible protective-order statute.

The BIA rejected this argument, ruling that it was Mr. Ninamango's burden to prove that his offense fell within a section of the Cohabitant Abuse Act that did not disqualify him from relief. This approach finds support in our case law. *See Garcia*, 584 F.3d at 1289-90 (alien bears burden of proving entitlement to requested benefit or privilege and cannot meet that burden through reliance on inconclusive record).

In the briefing on his petition for review, Mr. Ninamango does not attempt to defend the argument he made to the BIA. He has abandoned his "divisibility" argument in favor of a different one. He now argues that the modified categorical

approach does not apply at all, because the Cohabitant Abuse Act is not a "divisible" statute within the meaning of *Descamps*. This is true, he argues, because a jury would not have to agree unanimously on which of the protective-order provisions in § 30-6-4.2(2)(a)-(e) he violated in order to convict him. Thus, he claims, § 30-6-4.2(2) is merely an "overbroad" statute, not a "divisible" one.

Whatever the merits of this argument, Mr. Ninamango failed to exhaust it by presenting it to the BIA. "Ordinarily, a petitioner must exhaust all administrative processes available to hear his arguments before he may seek to bring those arguments to court." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1235 (10th Cir. 2010). To satisfy the exhaustion requirement, "an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court." *Id.* at 1237. Mr. Ninamango failed to present his argument that § 30-6-4.2(2) is an "overbroad" statute, rather than a "divisible" one, to the BIA.

While acknowledging the exhaustion requirement, Mr. Ninamango argues that this case falls within an exception to that requirement. He contends that *Descamps*, which changed the applicable law concerning what constitutes a "divisible" statute, constitutes intervening Supreme Court authority that became available only after he filed his appeal to the BIA and therefore we should excuse his failure to exhaust and consider his argument.

In support of his contention, Mr. Ninamango cites cases involving our ability to entertain arguments made for the first time on appeal when those arguments rely

on intervening authority. It is doubtful that this practice should be used to circumvent the important goals served by the administrative-exhaustion requirement, particularly given the availability of agency reopening or reconsideration procedures. *Cf. United States v. Lopez-Velasquez*, 629 F.3d 894, 899-900 (9th Cir. 2010) ("In general, when intervening law renders an alien eligible for discretionary relief for which he was ineligible at the time of his deportation hearing, the proper remedy is for the alien to file a motion to reopen." (brackets, ellipsis, and internal quotation marks omitted)). But even if we were to recognize a "supervening decision doctrine" to excuse exhaustion of arguments that became available only after the conclusion of BIA proceedings, we would not apply it here.

First, *Descamps* did not express new law. *See United States v. Tenderholt*, 587 F. App'x 505, 506 (10th Cir. 2014) ("The purpose of *Descamps* was not to make new law but to correct the Ninth Circuit's misunderstanding of prior opinions. The Court began its discussion of the issue before it by stating that its 'caselaw . . . all but resolves this case.'" (quoting *Descamps*, 133 S. Ct. at 2283.)). Second, *Descamps* was decided on June 20, 2013. The BIA did not reach its decision in this case until April 3, 2014, nearly a year after *Descamps* was decided. Thus, Mr. Ninamango had ample opportunity to bring *Descamps* and his statutory overbreadth argument to the BIA's attention in advance of its decision. But he failed to do so. Instead he raised the *Descamps* issue for the first time in this petition for review. His argument is therefore unexhausted, and we lack jurisdiction to consider it.

- 13 -

For similar reasons, we also reject Mr. Ninamango's request that this matter be remanded to the BIA for further consideration in light of *Descamps*. Had *Descamps* been decided after the BIA reached its decision in this case, we might have entertained a motion to remand to permit the BIA to consider the effect of *Descamps*. Or had Mr. Ninamango raised a *Descamps* argument before the BIA that it failed to consider, remand might have been appropriate. *See Niang v. Gonzales*, 422 F.3d 1187, 1197 (10th Cir. 2005) ("[W]hen [the BIA] has failed to address a ground *raised by an applicant* in support of her claim, we should ordinarily not reverse on that ground but should instead remand if the ground appears to have any substance." (emphasis added)). But that is not the situation here.

**CONCLUSION**

The petition for review is denied in part (to the extent Mr. Ninamango raises arguments that were previously presented to the BIA) and dismissed in part (concerning his attempt to raise an argument not previously presented to the BIA).

Entered for the Court

Harris L Hartz
Circuit Judge

- 14 -